*In re* ÁNGEL R. CARDONA UBIÑAS, querellado.

*Número:* CP-2001-03          *Resuelto:* 15 de marzo de 2002

*Roberto J. Sánchez Ramos, Procurador General*, e *Yvonne Casanova Pelosi, Procuradora General Auxiliar*, abogados de El Pueblo; *Ramón Negrón Soto*, Comisionado Especial, en informe; *Eduardo Villanueva Muñoz*, abogado del querellado; *Ángel R. Cardona Ubiñas, pro se.*

PER CURIAM:

## I

Según los hechos estipulados por las partes, el 20 de marzo de 1989 el Lcdo. Ángel Roberto Cardona Ubiñas (en adelante Lcdo. Cardona Ubiñas o querellado) autorizó la Escritura Núm. 2 mediante la cual se efectuaba un contrato de compraventa entre el Sr. Rafael Báez Ortega, como vendedor, y la Sra. Lucía López Colón, como compradora. Esta última (en adelante Sra. López Colón o querellante) está dentro del cuarto grado de consanguinidad del querellado, hecho que éste desconocía al momento de autorizarse la transacción.[1]

El vendedor de la transacción fue a presentar la escritura al Registro de la Propiedad pero, debido a que la copia

---

[1] La Sra. López Colón fue hermana de crianza del padre del querellado, pero este último no sabía que su abuelo paterno la había adoptado formalmente hacía varios años. El querellado advino en conocimiento de la adopción varios días después de haber otorgado la escritura.

que le había entregado el abogado no era certificada, ésta no pudo ser presentada. El vendedor procedió a informarle a la querellante sobre ese hecho. Ante tal situación, la quejosa comenzó a tratar de comunicarse con el abogado querellado, pero sus gestiones resultaron infructuosas. No fue sino hasta cuatro meses después, cuando casualmente se encontraron en un establecimiento comercial, que el querellado le dijo a la Sra. López Colón que habían surgido problemas y que había que rehacer la escritura. Excepto por este encuentro en el centro comercial, el Lcdo. Cardona Ubiñas nunca vio o se comunicó con la querellante.

El vendedor le informó a la Sra. López Colón que iba a buscar a otro abogado para efectuar una nueva escritura y que los gastos los debía costear ella o, de lo contrario, rescindiría del negocio jurídico. También le dijo que el precio de venta y las condiciones contractuales cambiarían. Ante esta situación, la Sra. López Colón buscó asesoramiento legal con la licenciada Aponte Torres, la cual entabló una acción civil contra el vendedor y el abogado querellado. En esta acción se le solicitaba al vendedor que otorgara una nueva escritura bajo las mismas condiciones originales. La licenciada Aponte Torres trató infructuosamente de comunicarse con el querellado para que éste le proporcionara una copia certificada de la escritura. El querellado nunca respondió a los requerimientos de la abogada; más aún, éste no había incluido la escritura en su Protocolo notarial. Debe señalarse que el Informe del Comisionado Especial designado para atender la querella señaló ocho faltas notariales en la escritura, además de la de que uno de los otorgantes estaba dentro del cuarto grado de consanguinidad del querellado.

La Sra. López Colón desistió de la acción al otorgarse otra escritura ante otro notario con las mismas condiciones contractuales que la primera, y al ser este otorgamiento sufragado en su totalidad por el querellado.

Atendiendo a nuestra orden, el Procurador General presentó una querella en la cual le imputó al Lcdo. Cardona

Ubiñas once cargos: nueve por violación a la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*), según enmendada, y dos por violación a los Cánones 18 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. En la contestación a la querella, el Lcdo. Cardona Ubiñas aceptó todos los cargos excepto el que le imputaba violación al Canon 19, y aceptó parcialmente la violación al Canon 18, sólo en lo que respecta a su carácter de notario.(²)

Luego de estudiar la querella y la contestación a ésta, nombramos a un Comisionado Especial para que rindiese un informe con las determinaciones de hecho y recomendaciones. El 5 de octubre de 2001 el Comisionado Especial sometió su informe, en el cual concluyó que el querellado cometió todos los cargos imputados en la querella, incluso la violación al citado Canon 19.

## II

El Canon 18, *supra*, le exige al abogado rendir una labor idónea de competencia y diligencia. A pesar que este canon menciona esta labor idónea con relación al cliente, reiteradamente hemos interpretado que este canon aplica a la labor del abogado-notario. Véanse: *In re González Maldonado*, 152 D.P.R. 871 (2000); *In re Martínez Ramírez*, 142 D.P.R. 329, 340–341 (1997); *In re Salichs Martínez*, 131 D.P.R. 481, 487–488 (1992); *In re Díaz García*, 104 D.P.R. 604, 608 (1976). Recordemos que el notario, como abogado, está obligado por los cánones del Código de Ética Profesional. *In re Igartúa Muñoz*, 153 D.P.R. 315 (2001).

En el caso de autos, las actuaciones del querellado dis-

---

(²) En el Informe de la Conferencia entre Abogados, el querellado se allanó a todos los cargos, excepto al que se le imputa la violación al Canon 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

tan de la idoneidad que debe caracterizar a la labor de todo abogado. Las faltas notariales y la tardanza en tratar de rectificar sus efectos se tradujeron en gastos y pesares adicionales para la querellante, la cual tuvo que instar una acción civil para que el vendedor se comprometiera a honrar las condiciones previas de la compraventa y para que se otorgara una escritura pública acorde con la Ley Notarial de Puerto Rico. Las faltas notariales y la tardanza en rectificar o mitigar sus efectos nos llevan también a la discusión del Cargo XI, el cual le imputa al Lcdo. Cardona Ubiñas una violación al Canon 19, *supra*.

El Canon 19, *supra*, le impone al abogado el deber de mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. Este canon aplica también en el carácter de abogado-notario. *In re Cardona Vázquez*, 108 D.P.R. 6 (1978). En un caso como el de autos, este deber se traduce en informarle a las personas involucradas en la transacción efectuada por el notario las deficiencias de su otorgamiento y su efecto. La falta a este deber en el caso de autos se recrudece, ya que el querellado no atendió las llamadas o los requerimientos de la Sra. López Colón. Pasaron cuatro meses desde el otorgamiento de la escritura hasta el encuentro casual e inesperado en un centro comercial con la querellante. Es entonces cuando el Lcdo. Cardona Ubiñas le informa a la querellante que había que rehacer la escritura. Este cuadro fáctico presenta una falta de diligencia en informar que, a su vez, genera una clara violación al Canon 19, *supra*.

En una ocasión anterior censuramos al Lcdo. Cardona Ubiñas por faltas a los citados Cánones 18 y 19. Véase *In re Cardona Ubiñas*, 146 D.P.R. 598 (1998).(³) Determina-

---

(³) A pesar de que en el caso *In re Cardona Ubiñas*, supra, aparece en el epígrafe el nombre de Roberto Cardona Ubiñas, éste es la misma persona que el del caso de marras, Lcdo. Ángel Roberto Cardona Ubiñas. Véanse: Contestación a la Querella, pág. 2; Minuta del Comisionado Especial de 28 de agosto de 2001, pág. 1.

mos en esa ocasión que el querellado violó también los Cánones 18 y 19 del Código de Ética Profesional, *supra*.

Al considerar como elemento mitigante que el querellado aceptó la gran mayoría de los cargos imputados en su contra y que sufragó todos los gastos en que incurrió por la querellante para rectificar sus errores, suspendemos al Lcdo. Ángel R. Cardona Ubiñas del ejercicio del notariado por el término de un (1) año a partir de la notificación de la sentencia y hasta que otra cosa disponga el Tribunal. La sanción entrará en vigor inmediatamente después de su notificación. Se ordena, además, la incautación inmediata del Protocolo notarial del querellado. Le apercibimos que de seguir incurriendo en faltas éticas profesionales, seremos más severos en la imposición de sanciones.

*Se dictará la correspondiente sentencia.*