per curiam:
El Lie. Carlos J. Nazario Díaz fue admitido al ejercicio de la abogacía en Puerto Rico el 22 de julio de 1997 y al ejercicio del notariado el 15 de agosto de 1997. El presente procedimiento disciplinario contiene la formulación de una serie de cargos por conducta alegadamente violatoria al Art. 2 de la Ley Notarial de Puerto Rico y a los Cánones 18, 35, y 38 del Código de Ética Profesional.
I
La presente querella se origina con una queja que presentó ante la Oficina del Procurador General el Sr. Francisco A. Quiles contra el Lie. Carlos J. Nazario Díaz (licenciado Nazario Díaz o querellado). El 16 de junio de 2006 referimos la queja al Procurador General para investigación e informe. Recibido el Informe del Procurador, en el cual *104 concluía que el licenciado Nazario Díaz había incurrido en violaciones a los Cánones 18, 35 y 38 del Código de Etica Profesional([1]) y al Art. 2 de la Ley Núm. 75 de 2 de julio de 1987, Ley Notarial de Puerto Rico (Ley Notarial de 1987),([2]) ordenamos presentar la querella correspondiente contra el licenciado Nazario Díaz.
El 13 de febrero de 2007, mediante una Resolución emitida por este Tribunal, designamos a la honorable Crisanta González Seda como Comisionada Especial para que recibiera la prueba correspondiente y nos rindiera un Informe.
Aclarado el trámite procesal, pasamos a resumir los hechos que sirven de trasfondo a la querella que pende ante nuestra atención.
II
En 1991, el Sr. Francisco A. Quiles y su esposa, la Sra. Alicia Ortiz Rodríguez (compradores o querellantes), iniciaron los trámites para adquirir un solar ubicado en el barrio Buena Vista del municipio de Bayamón. Dicho solar constaba inscrito a favor de la Sra. Aurelia Velázquez y la sucesión del Sr. Jorge Torres Febo, padre del Sr. Pablo Torres Figueroa, único hijo del fenecido esposo de la Sra. Aurelia Velázquez, quienes accedieron a vender el solar.([3])
Para realizar los trámites legales correspondientes de la compra del solar, el Sr. Francisco A. Quiles y su esposa contrataron los servicios el Lie. Ricardo Skerrett.([4]) El licenciado Skerrett se comprometió a preparar la declaratoria de herederos del fenecido Sr. Jorge Torres Febo, a peti *105 ción de la Sra. Aurelia Velázquez y su hijastro, el Sr. Pablo Torres Figueroa, y a presentar en el Registro de la Propiedad la escritura de compraventa del referido solar con la resolución judicial obtenida durante el proceso de declaratoria de herederos.
La escritura de compraventa se otorgó ante el licenciado Skerrett. Los vendedores pagaron los gastos de la declaratoria de herederos y los compradores pagaron los gastos de la escritura de compraventa. El Sr. Francisco A. Quiles y su esposa entendieron que el licenciado Skerrett tenía todos los documentos necesarios y le confiaron todo lo relacionado para la inscripción de la escritura de compraventa.
Luego de un tiempo, el licenciado Skerrett le entregó al Sr. Francisco A. Quiles una copia de la escritura de compraventa. Dicha copia resultó ser un borrador de la Escritura Núm. 4 otorgada, pero no contenía el día ni el mes.
En 1995, los compradores se enteraron de que el licenciado Skerrett no tramitó ninguno de los documentos encomendados. A raíz de ello, comparecieron ante la Oficina del Procurador General y presentaron una queja en su contra. ([5])
Para resolver el problema que tenían con la escritura y la tramitación de su inscripción, el Sr. Francisco A. Quiles habló con el Lie. Peter Serrano, quien les expresó que, por la cantidad de trabajo y los compromisos que en ese momento tenía, les refería al licenciado Nazario Díaz. Es así como el Sr. Francisco A. Quiles y su esposa, la Sra. Aurelia Ortiz Rodríguez, contrataron los servicios del licenciado Nazario Díaz.
*106 El 14 de octubre de 1997, el licenciado Nazario Díaz otorgó la Escritura de Compraventa Núm. 6. Según se acordó, los compradores recogieron en la oficina del licendiado Nazario Díaz la escritura de compraventa en un sobre sellado y la presentaron ante el Registro de la Propiedad. ([6])
Durante 1998, los compradores decidieron gestionar un préstamo garantizado con la propiedad en cuestión a través de Champion Mortgage. Para ello se otorgó una escritura de primera hipoteca a favor de Champion Mortgage ante el Lie. Ruy V. Díaz Díaz.
El 10 de febrero de 1999, la Lie. María Teresa Pérez Torres, abogada de Champion Mortgage (licenciada Pérez Torres), dirigió una misiva al licenciado Nazario Díaz en la cual le informó que la escritura de compraventa suscrita por él no pudo ser inscrita, pues se requería presentar ante el Registro de la Propiedad los documentos relacionados con la herencia. La licenciada Pérez Torres explicó a los compradores que el préstamo hipotecario solicitado dependía de que la escritura de compraventa fuese debidamente inscrita en el Registro de la Propiedad.
El 22 de febrero de 1999, el licenciado Nazario Díaz contestó la carta de la licenciada Pérez Torres, en la que le indicó lo siguiente:
“Mi cliente, el Sr. Francisco Quiles, conseguirá los documentos de herencia solicitados por el Registro de la Propiedad. Favor de concedernos tiempo suficiente para poder conseguir y radicar dichos documentos, para que el registro sea debidamente completado”. (Enfasis suplido.)([7])
No obstante, surge del expediente que en una conversación telefónica, el Sr. Francisco A. Quiles le indicó al licenciado Nazario Díaz que contrataría a otro abogado para que *107 preparara la instancia y presentación de la declaratoria de herederos.([8]) El Sr. Francisco A. Quiles y su esposa retiraron la escritura de compraventa del Registro de la Propiedad.
El 10 de enero de 2001 la licenciada Pérez Torres dirigió una segunda misiva al Sr. Francisco Quiles y a su esposa, en la que les urgió a presentar en el Registro de la Propiedad los documentos relacionados con la declaratoria de herederos del Sr. Jorge Torres Febo ya que, hasta que no se presentasen, la propiedad seguiría inscrita a favor de la vendedora y la sucesión del Sr. Jorge Torres Febo.
Surge del “Informe de la Comisionada Especial” que en diciembre del 2000, la licenciada Pérez Torres se comunicó telefónicamente con el licenciado Nazario Díaz. Durante la conversación, ésta reclamó al licenciado Nazario Díaz que, a pesar del pago recibido por la declaratoria de herederos, aún éste no había realizado los trámites pertinentes. El licenciado Nazario Díaz afirmó que él no había recibido pago alguno por la tramitación de la declaratoria de herederos, sino por la escritura de compraventa. Ante esta situación, el Sr. Francisco A. Quiles y su esposa se dirigieron al Colegio de Abogados y, posteriormente, al Procurador General, para presentar una queja contra el licenciado Nazario Díaz.
Así las cosas, el licenciado Nazario Díaz le comunicó al Sr. Francisco A. Quiles que estaba dispuesto a completar gratuitamente el trámite necesario de la declaratoria de herederos y la inscripción de la escritura de compraventa en el Registro de la Propiedad.
Sin embargo, el Sr. Francisco A. Quiles le comunicó al licenciado Nazario Díaz que prefería que un abogado de su confianza, el licenciado Santos Sifonte, gestionara estos asuntos. El licenciado Nazario Díaz accedió y, además, *108 acordó pagar al licenciado Santos Sifonte $575 como honorarios. ([9])
Pasado un tiempo, el licenciado Santos Sifonte informó al Sr. Francisco A. Quiles y a su esposa que no había podido completar el trámite, ya que el licenciado Nazario Díaz le había informado que no tenía los certificados de defunción, nacimiento y matrimonio, documentos necesarios para presentar la petición de declaratoria de herederos.
Según este trasfondo fáctico, debemos resolver si el licenciado Nazario Díaz incurrió en las faltas imputadas, es decir, si infringió el Art. 2 de la Ley Núm. 75, Ley de Notarial de 1987, supra, y los Cánones 18, 35 y 38 del Código de Etica Profesional, supra.
Ill

Cargo I

El Art. 2 de la Ley de Notarial de 1987, supra, dispone, en lo pertinente, lo siguiente:
El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos ex-trajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle [s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Énfasis suplido.([10])
El notario es custodio de la fe pública, y al autorizar un documento está dando fe del mismo; por lo tanto debe cerciorarse de que ese instrumento público cumple con todas las formalidades de la ley, es legal y verdadero, y *109 se trata de una transacción legítima y válida. ([11]) Por la esencia pública de su función, los notarios son llamados a ser sumamente cautelosos en el ejercicio de su práctica, conscientes a toda hora de las consecuencias funestas que podría tener su negligencia sobre los negocios jurídicos en que se involucran. ([12]) Es la condición de certeza y confianza de las actuaciones del notario lo que le brinda eficacia y garantía al documento notarial, y por ello es imprescindible que el notario observe la mayor pureza y honestidad en el descargo de la fe pública notarial.([13])
No se requiere que un notario falte a la verdad intencionalmente para omitir su deber con la fe pública y con los cánones del Código de Ética Profesional; más bien puede ser el resultado de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario, o de una confianza desmesurada en las manifestaciones de otros compañeros de profesión. ([14])
En lo que respecta a este cargo, el Procurador General y la Comisionada Especial concurren en que el querellado no podía otorgar una escritura de compraventa de una propiedad —que no constaba inscrita a nombre de uno de los vendedores— sin que antes se hubiera declarado heredero de dicha propiedad al referido vendedor.
Además, determinaron que el querellado sabía o debió saber que el vendedor —el Sr. Pablo Torres Figueroa— no tenía el título de la propiedad objeto de la compraventa inscrito a su nombre, pues no había una resolución judicial que lo reconociera como tal. No tenía capacidad legal para enajenar el título de la propiedad inscrito a nombre de su padre ya fallecido.

*110
Cargo II

El Canon 18 del Código de Ética Profesional([15]) entre otras cosas, obliga a todo abogado a defender los intereses de su cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad, y actuando en aquella forma que la profesión jurídica estima adecuada y responsable.
La referida norma ética prescribe y enfatiza la necesidad de que los abogados empleen toda su habilidad y conocimiento de forma tal que su actuación en la gestión a la que se comprometió no repercuta en perjuicio de los mejores intereses de su cliente, ya sea por descuido, negligencia o dilación indebida en los trámites de su caso([16]) A pesar de que este canon menciona esta labor idónea con relación al cliente, reiteradamente hemos interpretado que aplica a la labor del abogado-notario, ya que el notario, como abogado, está obligado por los cánones del Código de Ética Profesional([17])
Un abogado que acepta un caso y luego no demuestra la competencia y diligencia que exige el ejercicio de la abogacía, incurre en una violación seria a la ética profesional([18]) Es deber del abogado cumplir con el principio de diligencia que debe caracterizar la profesión jurídica y evitar toda indiferencia, desidia, preocupación o displicencia en el desempeño de su profesión([19]) En In re Cardona Ubiñas, 156 D.P.R. 340 (2002), resolvimos que el abogado que no informa a su cliente de los problemas con una escritura y dicha falta de comunicación resulta en gastos adicionales para el cliente, falta a sus deberes notariales.
*111 Además, el deber de desempeñarse en forma capaz y diligente impone al notario la obligación de hacer y ofrecer a las partes todas aquellas explicaciones, aclaraciones y advertencias necesarias para ilustrar todas las situaciones en la transacción.([20]) Sobre el particular hemos enfatizado que la responsabilidad de un notario es personal, indivisible e indelegable.
Por último, la función del notario trasciende el acto externo de la legalización de una firma.([21]) Presupone la creación de un nivel de entendimiento y comunicación entre el fedante y los otorgantes.([22]) El notario, como principal instrumento de la fe pública, tiene la indeclinable obligación de propiciar y cerciorarse de ese estado de conciencia informada en su cliente para obtener el consentimiento integrado de los otorgantes al acto notarial.([23])
En lo que respecta a dicha norma ética, el Procurador General alegó que las actuaciones del querellado al otorgar la escritura denotaron una clara falta de diligencia al ejercer su función notarial. Concluyó que éste se limitó al acto de legalizar las firmas de los otorgantes y que aun cuando el querellado no se comprometió con sus clientes a presentar la escritura de compraventa al Registro de la Propiedad, era su deber explicarles y orientarles acerca de los documentos necesarios para su inscripción. Además, expresó que el querellado faltó a su deber de diligencia al negarse a corregir las deficiencias señaladas por el Registrador de la Propiedad cuando la licenciada Pérez Torres así se lo comunicó.
La Comisionada Especial concluyó en su informe que el licenciado Nazario Díaz no defendió los intereses de su *112 cliente porque no empleó la mayor capacidad, lealtad, responsabilidad y honradez que dicho canon requiere. Le imputó falta de estudio y conocimiento sobre la ley aplicable a la situación que le plantearon sus clientes; es decir, el requisito de la previa inscripción o el tracto sucesivo contenido en la Ley Hipotecaria y del Registro de la Propiedad,([24]) que exige que para registrar documentos por los que se declaren, transmitan, graven, modifiquen o extinguen el dominio y demás derechos reales sobre bienes inmuebles, debe constar previamente registrado el derecho de la persona que otorgue o en cuyo nombre sean otorgados los actos o contratos referidos. Asimismo, indicó que el licenciado Nazario Díaz debió conocer y orientar a sus clientes sobre lo dispuesto en el Reglamento para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad en cuanto a los requisitos para la inscripción del derecho hereditario.([25])
Por último, enfatizó que transcurrieron varios años sin que el licenciado Nazario Díaz le diera seguimiento al asunto, de manera que pudiera inscribirse la escritura de compraventa en el Registro de la Propiedad.

*113
Cargo III

El Canon 35 del Código de Ética Profesional,([26]) entre otras cosas, dispone que el abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar un affidavit u otros documentos, y al presentar causas.([27]) En In re Aponte Berdecía, 161 D.P.R. 94 (2004), expresamos que cuando un notario viola la fe pública notarial —al no exponer la veracidad de unos hechos— incumple automáticamente con las disposiciones de este canon.
Se preceptúa, además, que no es sincero ni honrado utilizar medios que sean incompatibles con la verdad y que no se debe inducir a error al juzgador utilizando artificios o una falsa relación de los hechos o del derecho. ([28]) Dicho precepto impone a todo abogado unas normas mínimas de conducta, indispensables para promover el honor y la dignidad de la profesión. ([29])
En conformidad con tales postulados éticos, he-mos señalado que el abogado no puede proveer al tribunal información falsa o que no se ajuste a la verdad, ni puede ocultarle información certera que deba ser revelada. ([30]) Por ende, ante una imputación de violación al Canon 35, supra, no es defensa que no se haya obrado de mala fe o deliberadamente, ni con la intención de engañar o defraudar. Tampoco importa que no se haya causado daño a tercero.([31])
Sobre este cargo, el Procurador General y la Comisionada Especial concluyeron que el querellado faltó a la sinceridad al otorgar una escritura de compraventa en la que *114 dio fe de que el vendedor, Sr. Pablo Torres Figueroa, era el único y universal heredero del dueño de la propiedad —ya fallecido Sr. Jorge Torres Febo— sin tener en su poder una copia de la resolución sobre la declaratoria de herederos que así lo certificara. A su vez, concluyeron que el licenciado Nazario Díaz faltó a la sinceridad y honradez al no explicar a los comparecientes que no podía otorgarse la escritura de compraventa hasta que hubiese una resolución judicial sobre declaración de herederos y se completara el trámite ante el Departamento de Hacienda.
Se le imputó una violación a las disposiciones contenidas en el Canon 35, supra, ya que el contenido de la escritura de compraventa no se ajustó a la veracidad de los hechos al momento de su otorgación.

Cargo IV

El Canon 38 del Código de Ética Profesional![32]) exige a todo abogado el deber de esforzarse, al máximo de su capacidad, en la exaltación del honor y de la dignidad de la profesión, aunque esto conlleve sacrificios personales. Asimismo, dicho canon le impone la responsabilidad de evitar hasta la apariencia de conducta profesional impropia.
La apariencia de conducta impropia claramente tiene un efecto dañino sobre la imagen, la confianza y el respeto de la ciudadanía hacia la profesión, igual que lo tiene la verdadera “impropiedad ética”.([33]) Distinto quizás a otras profesiones, dicha práctica conlleva una seria y delicada función ciudadana, pues representa servicio, ética y ejemplo.([34]) Por ello, al interpretar este canon, hemos señalado que la apariencia de conducta impropia puede resultar *115 muy perniciosa al respeto de la ciudadanía por sus instituciones de justicia y por la confianza que los clientes depositan en sus abogados([35])
En repetidas ocasiones este Tribunal ha advertido que por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen([36]) El abogado tiene el deber de lucir puro y libre de influencias extrañas a su gestión profesional y, en el descargo de sus responsabilidades profesionales, debe cuidar que sus actuaciones no den margen a la más leve sospecha de que promueve intereses suyos encontrados con los de su cliente([37]) Ello implica que todo abogado tiene el deber de desempeñarse con dignidad y alto sentido del honor, y aunque ello conlleve ciertos sacrificios personales, deberá conducirse en forma digna y honorable, tanto en la vida privada como en el desempeño de su profesión([38]) Sobre este canon y en relación con la conducta de los notarios, en In re Torres Olmeda, 145 D.P.R. 384 (1998), expresamos que otorgar un documento notarial en violación de la Ley Notarial de Puerto Rico constituye una violación a este precepto ético.
La Comisionada Especial, luego de examinar la evidencia documental y el Informe remitido por el Procurador General, concluyó que, en efecto, la conducta del licenciado Nazario Díaz no se ajustó a las exigencias contenidas en el Canon 38, supra. Asimismo, expresó que no encontró prueba alguna capaz de sostener que otro abogado estaba gestionando el trámite sobre declaración de herederos, según argumentó el licenciado Nazario Díaz en su contestación a la querella presentada en su contra. La única evidencia sobre un contrato anterior con otro abogado se refiere al *116 licenciado Skerrett, quien no cumplió con su encomienda, siendo éste el motivo por el cual los querellantes llegan a la oficina del licenciado Nazario Díaz.
Al respecto señaló que, de haber sido cierta esta información, el licenciado Nazario Díaz debió procurar conocer el nombre del abogado que tramitaba el asunto y asegurarse de la etapa en la que se encontraba el procedimiento sobre declaratoria de herederos.
Debido a que no existía documento legal alguno que declarase al Sr. Pablo Torres Figueroa como único heredero, fue incorrecto declararlo así en un documento público. Esta conducta, la ausencia de advertencias, así como las omisiones en el cumplimiento de sus deberes como notario, constituyeron conducta impropia.
IV
Según los postulados éticos antes esbozados, resolvemos lo planteado en el presente procedimiento disciplinario. Veamos.
El notario puertorriqueño no sólo está obligado por los preceptos de la Ley Notarial de 1987 y su reglamento, sino también, como abogado, por los cánones del Código de Etica Profesional.([39]) Cuando un notario no cumple con las obligaciones y los deberes que le imponen la ley y el ordenamiento ético, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la fe pública depositada en él.([40]) En este sentido hemos resuelto que otorgar un documento notarial en contravención con nuestra Ley Notarial de 1987 constituye una violación a los Cánones 35 y 38 del Código de Etica Profesional, supra.
*117 En el caso que hoy nos ocupa, el Procurador General y la Comisionada Especial señalaron que el licenciado Nazario Díaz violó el Art. 2 de la Ley de Notarial de 1987, supra, y los Cánones 35, 38 y 18 del Código de Ética Profesional, supra. En esencia, concluyeron que el querellado faltó a la verdad de los hechos al otorgar una escritura de compraventa y afirmar que uno de los vendedores era el propietario a título de herencia, sin constar ante sí una resolución judicial que lo reconociera como tal.
Al respecto conviene tener presente que faltar a la verdad de los hechos es una de las faltas más graves que un notario, como custodio de la fe pública, puede cometer.([41]) La fe pública notarial es la espina dorsal de todo el esquema de autenticidad documental notarial. ([42])
El sistema notarial y la fe pública de nadá valdrían sin la presunción de que el notario, depositario de ésta, actuará conforme a sus obligaciones ético-legales. ([43]) De acuerdo con ello, el Estado confiere a un documento autorizado por un notario una presunción de credibilidad y certeza de que lo afirmado en éste es cierto, correcto y concuerda con la realidad.([44]) Por ende, un documento autorizado por un notario asegura que es legal y verdadero, y que se trata de una transacción válida y legitimad([45]) Esta responsabilidad exige que el notario, como profesional del derecho, conozca las leyes, la doctrina, las costumbres y la jurisprudencia([46])
Fue un hecho probado que en el momento cuando el licenciado Nazario Díaz otorgó la escritura, la propiedad ob *118 jeto de la compraventa no constaba inscrita a nombre de uno de los vendedores. Los dueños regístrales de la propiedad eran la Sra. Aurelia Velázquez Rivera y su fallecido esposo, el Sr. Jorge Torres Febo. Sin embargo, el querellado afirmó en dicho documento que el Sr. Pablo Torres Figueroa, hijo del fenecido Sr. Jorge Torres Febo, comparecía en calidad de dueño y como único heredero universal.([47]) Subsiguientemente, dio fe de que “los comparecientes t[enía]n la capacidad legal para otorgar [Za] escritura de compraventa”, pero sin tener ante sí la resolución judicial que lo acreditara.([48]) Asimismo, expresó que los vendedores adquirieron la propiedad conforme al contenido de una escritura de 1977, lo cual no es correcto, ya que fue el causante y no el compareciente quien adquirió la propiedad de esa forma.([49]) Además, el querellado señaló que “LOS COMPRADORES U sin más requisito que el presente otorgamiento\f] entran en la inmediata posesión real y pacífica del inmueble que adquieren en este acto\,\ a tí tulo de dueñoQ quedando expresamente autorizado[s para] realizar actos en tal calidad”.([50])
En la escritura de compraventa no consta advertencia o condición alguna referente a que dicho acto estuviese sujeto a la resolución judicial sobre la declaración de herederos.
¿Podemos avalar esta conducta? La respuesta es en la negativa. Como bien indicó el Informe de la Comisionada Especial, tales expresiones no responden a la realidad del *119 momento del otorgamiento de la escritura de compraventa ni a las normas jurídicas establecidas.
Nótese que en la situación que nos ocupa, lo correcto era esperar la resolución judicial en la cual se declarara, sin lugar a duda, su carácter de heredero universal. El análisis efectuado refleja que la actuación del querellado no es compatible con el deber que tiene todo notario de cerciorarse de la capacidad de los otorgantes para que del instrumento surja plena eficacia legal.
Entre los deberes principales que posee un notario al autorizar una escritura de compraventa se encuentra, entre otros, investigar ciertos hechos y datos de los que depende la eficacia y validez del negocio, darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y las consecuencias del negocio.([51])
Se colige de lo anterior que la preparación técnica que la ley exige al notario, así como los deberes que le impone al redactar una escritura pública, permiten obtener la seguridad relativa —pero suficiente para la vida jurídica— de que el negocio en ella recogido es válido y legal e, incluso, permiten reconocer al sujeto de aquél la titularidad de los derechos que de dicho negocio se deriven.([52])
El licenciado Nazario Díaz no podía redactar la escritura de compraventa a base de las declaraciones de los otorgantes simplemente. Tenía el deber de corroborar y pasar juicio sobre la titularidad y, por ende, la capacidad legal del vendedor para disponer del bien inmueble en cuestión. Sabido es que, en ausencia de testamento, el título hereditario será la resolución judicial sobre declaratoria de herederos, acreditada mediante copia debidamente certificada.
En conformidad con los principios de hermenéutica legal, *120 no podemos refrendar la actuación del querellado ni su posición referente a que el compareciente es quien determina si es o no el dueño de la propiedad para comparecer en el documento público. El querellado, en su réplica a la querella del Procurador General, argüyó que las personas se convierten en herederos automáticamente, con el derecho a disponer de los bienes de la herencia.([53]) Tal argumento es errado. Todo notario tiene el deber ineludible de comprobar, mediante los documentos acreditativos, las facultades del otorgante para obrar en la capacidad que reclama, cumpliendo así con las formalidades requeridas por ley.
Según expresáramos anteriormente, tanto el Art. 2 de la Ley Notarial de 1987, supra, como el Canon 35 del Código de Etica Profesional, supra, imponen a los abogados un deber de sinceridad y honradez que se materializa al redactar una declaración jurada u otros documentos y defender las causas. En esta línea, hemos determinado que las obligaciones consagradas por tal norma ética constituyen pautas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión.([54]) El compromiso de un abogado con la verdad debe ser incondicional. ([55]) En consecuencia, se infringe el citado Canon 35 con el simple hecho objetivo de faltar a la verdad, independientemente de los motivos para la falsedad. ([56])
De igual forma, en lo concerniente al Canon 38 del Código de Etica Profesional, supra, resulta forzoso concluir que el licenciado Nazario Díaz violó sus disposiciones, según le fue imputado en la querella del Procurador General. El querellado no se desempeñó en la gestión encomendada con la cautela y el celo que demanda la función pública del notariado. Al ser informado de que la escritura no pudo ser *121 inscrita, tampoco procuró tramitar y atender con la urgencia y diligencia necesarias la declaratoria de herederos pendiente de sus clientes.
El principio de apariencia y el deber general de los abogados de esforzarse al máximo en la exaltación del honor y la dignidad de su profesión tiene que sostenerse sobre la impresión que se le da a un observador razonable de la violación efectiva de los cánones de ética profesional.([57]) Ciertamente, en el presente caso, la conducta del querellado constituyó en la realidad y en la apariencia una impropia conforme al Canon 38, supra.
En atención a la violación del Canon 18 del Código de Etica Profesional, supra, imputada contra el licenciado Nazario Díaz cabe señalar que la actuación del querellado repercutió en perjuicio de los intereses de sus clientes, el Sr. Francisco A. Quiles y su esposa, y de la Sra. Aurelia Velázquez. Teniendo en cuenta que el propósito para el cual fue contratado era otorgar la escritura de compraventa y lograr la inscripción que el licenciado Skerrett nunca realizó, el licenciado Nazario Díaz debió conocer que previo a la compraventa debía solicitarse en el Registro de la Propiedad la inscripción del bien inmueble o derecho real a favor de los herederos mediante la presentación del título donde conste el derecho hereditario.([58]) Esto es, la presentación de la resolución judicial donde se declarara, entre otras cosas, el derecho hereditario y sus circunstancias personales. Además, junto con esto, la certificación del Departamento de Hacienda sobre el relevo de gravamen de contribución sobre caudal relicto.([59])
No surge del expediente que esta necesidad fuese atendida diligentemente por el querellado. Dicho canon exige al abogado el deber de desempeñarse en forma capaz y dili *122 gente; es decir, exige que ponga toda su capacidad y cuidado para ejecutar y conseguir su encargo mediante los medios lícitos. Coincidimos con el criterio de la Comisionada Especial de que al querellado le faltó estudio y conocimiento sobre la ley aplicable a la situación que sus clientes venían confrontando años atrás y, por ende, no defendió los intereses de sus clientes con la mayor capacidad, lealtad y honradez que exige el Canon 18 del Código de Ética Profesional, supra.
En el presente caso, tras un examen del informe preparado por la Comisionada Especial y la prueba del expediente, no encontramos razón por la cual debamos intervenir con sus conclusiones. Una vez más reiteramos la trascendencia de la función del notario en la esfera privada y profesional que requiere suma diligencia y celo profesional de quien la ejerce en Puerto Rico.([60]) La amplitud o lo limitado de la práctica de un notario no debe incidir con la cautela, el esfuerzo, el tesón y el cuidado con que éste se debe ejercer y con el cabal cumplimiento de las obligaciones y los deberes que imponen al notario la ley y los cánones del Código de Ética Profesional. ([61])
V
Por los fundamentos que anteceden, resolvemos que el Lie. Carlos J. Nazario Díaz violó el Art. 2 de la Ley de Notarial de 1987 y los Cánones 18, 35, y 38 del Código de Etica Profesional. En vista de ello, se suspende por el término de seis meses del ejercicio de la abogacía y la notaría, apercibiéndole al querellado del deber de cumplir a cabalidad, en adelante, con los cánones de ética que rigen la profesión de abogado y la Ley Notarial de Puerto Rico y su reglamento.

(1) 4 L.P.R.A. Ap. EX.

(2) 4 L.RR.A. see. 2002.

(3) La Sra. Aurelia Velázquez y su hijastro, el Sr. Pablo Torres Figueroa, residían en el estado de la Florida al momento de efectuarse la compraventa del solar.

(4) Resulta imprescindible remontarse al 1991, para esbozar los hechos que antecedieron a la actuación del Lie. Carlos J. Nazario Díaz (licenciado Nazario Díaz) y que ocasionaron que los compradores no figuraran como dueños del solar en el Registro de la Propiedad.

(5) Los compradores alegaron que al Lie. Ricardo Skerrett (licendiado Skerrett) se le pagaron $250 por la declaratoria de herederos y que éste había indicado que sólo restaba presentar la escritura de compraventa en el Registro de la Propiedad. A través de una certificación expedida por la Supervisora de índices Notariales, constataron que de los registros de la Oficina de Inspección y Notarías para 1991, no aparecía reportada la Escritura de Compraventa Núm. 4 otorgada por el licenciado Skerrett. Además, se les informó que el licenciado Skerrett fue suspendido del ejercicio de la abogacía desde 1993 hasta el 2001 por otros hechos y que, al momento, se encontraba en Estados Unidos.

(6) Minuta de Asiento de Presentación de 10 de diciembre de 1997, en la que se hace referencia a la Escritura de Compraventa Núm. 6 otorgada ante el notario. Exhibit 6 de la Contestación a querella.

(7) Carta de 22 de febrero de 1999 del licenciado Nazario Díaz a la Lie. María Teresa Pérez.

(8) Carta de 15 de marzo de 1999 del licenciado Nazario Díaz al Sr. Francisco A. Quiles.

(9) Carta de 31 de enero de 2006 del licenciado Nazario Díaz al Sr. Francisco A. Quiles.

(10) 4 L.P.R.A. see. 2002.

(11) In re Vera Vélez, 148 D.P.R. 1 (1999).

(12) In re Rodríguez Báez, 129 D.P.R. 819 (1992).

(13) íd.

(14) íd.

(15) 4 L.P.R.A. Ap. IX (Competencia del abogado y consejo al cliente).

(16) In re Marrero Figarella, 146 D.P.R. 541 (1998).

(17) In re Cardona Ubiñas, 156 D.P.R. 340 (2002); In re Igartúa Muñoz, 153 D.P.R. 315 (2001).

(18) In re Arroyo Rivera, 148 D.P.R. 354 (1999).

(19) In re Arana Arana, 112 D.P.R. 838 (1982).

(20) In re Jiménez Brackel, 148 D.P.R. 287 (1999).

(21) In re Meléndez Pérez, 104 D.P.R. 770, 775-776 (1976).

(22) íd.

(23) íd.

(24) Art. 57 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. see. 2260.

(25) Art. 50.2 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad:
“Será necesaria para la registración del derecho hereditario la presentación de la determinación judicial donde se declare la fecha del fallecimiento, estado civil del causante, a la fecha y la existencia de los herederos, o el testamento debidamente certificado por el Registro de Poderes y Testamentos acompañado del certificado de defunción del testador.
“En todo caso los interesados, sus mandatarios o sus representantes acompañaran con los títulos a inscribirse una instancia en la cual describirán las fincas o derechos pertenecientes al causante y se informará el número de finca con que aparezcan inscritos, así como folio y tomo. La instancia deberá estar suscrita ante el notario en todos los casos excepto cuando el abogado la suscriba. De la determinación judicial o de la instancia presentada surgirán las circunstancias personales de los herederos.
“Tanto en la herencia testada como en la intestada deberá presentarse junto con la instancia la certificación del Departamento de Hacienda sobre el relevo de gravamen de contribución sobre herencia o la autorización para realizar la transacción.”

(26) 4 L.P.R.A. Ap. IX (Sinceridad y honradez).

(27) Id.

(28) 4 L.P.R.A. Ap. IX.

(29) In re López de Victoria I, 163 D.P.R. 1 (2004); In re Collazo Sánchez, 159 D.P.R. 769 (2003); In re Montañez Miranda, 157 D.P.R. 275 (2002); In re Curras Ortiz, 141 D.P.R. 399 (1996).

(30) In re Filardi Guzmán, 144 D.P.R. 710 (1998).

(31) In re Astado Caraballo, 149 D.P.R. 790 (1999).

(32) 4 L.P.R.A. Ap. IX (Preservación del honor y dignidad de la profesión).

(33) íd.

(34) In re Cuyar Fernández, 163 D.P.R. 113 (2004); In re Cintrón Colón, 161 D.P.R. 778 (2004); Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599, 613 (1993).

(35) In re Rivera Vicente, supra; In re Fernández de Ruiz, 167 D.P.R. 661 (2006).

(36) In re Ortiz Brunet, 152 D.P.R. 542, 556 (2000); In re Silvagnoli Collazo, 154 D.P.R. 533 (2001).

(37) In re Morell, Alcover, 158 D.P.R. 791 (2003).

(38) In re Quiñones Ayala, 165 D.P.R. 138 (2005).

(39) In re Santiago Méndez, 151 D.P.R. 568 2000).

(40) In re Charbonier Laureano, 156 D.P.R. 575 (2002); In re Capestany Rodríguez, 148 D.P.R. 728 (1999).

(41) In re Vargas Hernández, 135 D.P.R. 603 (1994).

(42) In re Collazo Sánchez, supra.

(43) In re Feliciano Ruiz, 117 D.P.R. 269, 275 (1986), citando a A. Neri, Tratado teórico y práctico de derecho notarial, Buenos Aires, Ed. Depalma, 1969, Vol. I, pág. 443 et seq.

(44) íd.

(45) íd.

(46) íd., citando a Goenaga v. O’Neill de Milán, 85 D.P.R. 170 (1962).

(47) Escritura de compraventa otorgada ante el licenciado Nazario Díaz, pág. 1. Exhibit IV.

(48) Escritura compraventa otorgada por el licenciado Nazario Díaz, pág. 3. Exhibit IV.

(49) Escritura compraventa otorgada por el licenciado Nazario Díaz, pág. 3. No surge del Registro de la Propiedad que el compareciente hubiera adquirido la propiedad que aún aparecía inscrita a nombre del causante. Es inevitable concluir que esto lo conocía el querellado, ya que en la página cuatro de la escritura expresó tener una certificación del Registro de la Propiedad, la cual utilizó como estudio registral.

(50) Escritura de compraventa otorgada por el licenciado Nazario Díaz, pág. 5, párrafo segundo.

(51) P. Ávila Álvarez, Estudios de Derecho Notarial, Ed. Montecorvo, 1982.

(52) íd, pág. 77.

(53) Réplica al Informe del Procurador General, Anejo I de la Contestación del Querellado.

(54) In re Ortiz Martínez, 161 D.P.R. 572 (2004).

(55) In re Hernández Rosario, 170 D.P.R. 103 (2007).

(56) In re Fernández de Ruiz, supra.

(57) In re Sepúlveda Girón, 155 D.P.R. 345 (2001).

(58) 30 L.RR.A. see. 2260; Art. 71.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, see. 870.286.

(59) go.2 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, see. 870.199.

(60) In re Cruz Ramos, 129 D.P.R. 377 (1991).

(61) íd.