*In re* ISRAEL ARANA ARANA, querellado.

*Número:* Q-376     *Resuelto:* 19 de mayo de 1982

*Héctor A. Colón Cruz, Procurador General,* y *Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados promoventes; *Israel Arana Arana, pro se.*

I

PER CURIAM: En 21 de septiembre de 1977 separamos al abogado Israel Arana Arana del ejercicio de la abogacía y del notariado por haber hecho caso omiso de los varios requerimientos para que ofreciera su explicación sobre una queja radicada ante este Tribunal por un cliente de dicho abogado y sobre su incumplimiento con las disposiciones de la Regla 8(j) del Reglamento de este Tribunal. *In re Arana Arana,* 106 D.P.R. 210 (1977).

Mediante nuestra resolución de 27 octubre de 1977 reinstalamos al abogado Arana al ejercicio de la abogacía,

luego de haber comparecido e informado una dirección en la cual podía ser localizado. Quedó pendiente, sin embargo, la investigación que realizaba el Procurador General sobre varias quejas recibidas de clientes del abogado Arana sobre su proceder en el trámite de asuntos que le fueran encomendados.

De los informes rendidos por el Procurador General en 26 de septiembre de 1977 y en 2 de diciembre de 1977, el Informe del propio querellado, y los *exhibits* que forman parte de ellos, surgen los hechos que se exponen a continuación:

1. *Queja del Sr. Dennis R. Moore (en representación de Payco American Corp.).*

En 13 de julio de 1976 el señor Moore se querelló de que en junio de 1975 había remitido al abogado Arana un cheque por la suma de $93 para cubrir costos y honorarios con la encomienda de cobrar una cuenta a Hormiguera Oriental, Inc. sin que el abogado querellado se hubiera vuelto a comunicar con ellos. Ello fue el resultado de un memo del querellado de marzo de 1975 dirigido a la quejosa, en el que se recomendaba la radicación de un pleito con la promesa de resultados en 45 días. El Procurador envió comunicación sobre la queja al querellado a distintas direcciones que pudo obtener, pero las cartas fueron devueltas. Tampoco pudo obtener el número telefónico del querellado luego de tratar con la Compañía Telefónica y el Colegio de Abogados. Finalmente el querellado recibió por correo certificado la comunicación del Procurador, haciendo caso omiso de ella. *Después* de haber sido suspendido el querellado por este Tribunal se comunicó con el quejoso Moore y llegaron a un acuerdo mediante la devolución de la suma de $93. Aunque el querellado trata de demostrar que su dirección fue siempre la misma, por lo que no se explica por qué las cartas del quejoso no le llegaban, lo cierto es que el querellado nunca intentó comunicarse con el quejoso.

2. *Queja del Lcdo. Samuel I. Kohn (abogado de Universal Match).*

En 3 de diciembre de 1973 el bufete de abogados al que pertenece Kohn envió al abogado querellado la suma de $135 con la encomienda de que éste gestionara el cobro de una deuda de Costa Brava Restaurant sin que hasta el 14 de septiembre de 1976, fecha de la queja, hubiese realizado gestiones. El Procurador se dirigió al querellado comunicándole la queja. No fue hasta tres meses más tarde —en enero de 1977— que éste se comunicó con el Procurador y le solicitó una prórroga para someter una explicación, la cual no había sido sometida a la fecha del Informe del Procurador de 20 septiembre de 1977. *Después* de haber sido suspendido el querellado del ejercicio de la profesión, devolvió al licenciado Kohn la suma de $135.

3. *Queja del Lcdo. Stanley P. Salzman (en representación de Employers Liability Insurance Corp.).*

En abril de 1976 el Secretario de este Tribunal envió al querellado una copia de una queja contra éste formulada por dicho abogado Salzman. Aparece que el querellado informó al Secretario que por estar envuelto en actividades políticas deseaba esperar que terminara la campaña política para buscar ciertos documentos. Dos meses después de las elecciones solicitó tres meses de prórroga que fue limitada a dos meses. Dos días antes de vencerse la prórroga informó que necesitaba ir a Nueva York para aclarar ciertos extremos de la querella. Al regresar de Nueva York sometió al Secretario una explicación por escrito sobre la queja. Forma parte del expediente una comunicación del licenciado Salzman al querellado de 7 de diciembre de 1973 y otra de 24 de marzo de 1976 sobre el asunto que motivó la queja en el que exige una explicación sobre cierta diferencia en los cálculos de honorarios retenidos por el querellado, sin que conste que el querellado hubiere respondido a éste por escrito y sin que se impugnara la legitimidad de la referida comunicación. La

única gestión que informa el querellado bajo juramento es la visita a Nueva York casi un año después de la presentación de la queja sin que aparezca cuál fuera el resultado de ese viaje. *Después* de haber sido suspendido el querellado por este Tribunal es que produce una comunicación del quejoso al señor Juez Presidente en la que le informa que habiendo mediado la devolución por el querellado de la suma de $100 que se le había adelantado para cubrir los costos del pleito de cobro de dinero que le habían encomendado, se da el asunto por terminado. Cabe observar que la carta del quejoso al abogado Arana, que nunca le fue contestada, contiene expresiones de desesperación por la falta de atención a las misivas anteriores. Dice, por ejemplo: "A pesar de su promesa de rendir una contabilidad de su remesa en la suma de $107.88 respecto a un cobro de $1,200 todo lo que recibí de su oficina fue una nota en Julio 1974 en el sentido de que usted se encontraba fuera en una emergencia y que pronto retornaría y me daría el beneficio de un informe. Le he suplicado repetidamente que me envíe un informe y ha llegado el momento en que debo insistir en ello. Si no recibiere un informe a vuelta de correo me veré obligado a proteger los intereses de mis clientes informando este asunto a las autoridades concernidas."

4. *Queja del Sr. Edward Kane (en representación de The International Lawyers Law List).*

La queja enviada por el señor Kane al Señor Juez Presidente de este Tribunal señala que al querellado le fue encomendado el cobro de una cuenta de $5,036.76, la que cobró, pero no remitió el total a su representado, quedando a deber $3,536.76. El quejoso se vio obligado a contratar un abogado (Lcdo. Joseph W. Kiefer) a quien el querellado entregó la suma de $500 y un pagaré por el balance en 24 de abril de 1975. En vista de que no honró el pagaré, se instó una reclamación contra el querellado y se obtuvo una sentencia en rebeldía la cual, al no ser satisfecha, provocó

la queja contra él. *Después* de haber sido suspendido, el querellado se trasladó a Nueva York y logró llegar a un acuerdo con el quejoso, quien escribió al Señor Juez Presidente informándole que "éste (el querellado) ha resuelto satisfactoriamente el asunto y hemos cerrado nuestro expediente".

## II

El querellado Arana oportunamente sometió su informe explicando y exponiendo sus puntos de vista en cuanto a su proceder profesional, en respuesta a una orden nuestra de que compareciera a mostrar causa por la cual no debería ser disciplinado. Resolvemos.

Un examen de las cuatro quejas presentadas contra el abogado querellado Arana, a la luz de la experiencia misma que surge en el trámite ante este foro, tiende a revelar un patrón de conducta caracterizado por la indiferencia, desidia, despreocupación, inacción y displicencia de su parte con respecto a los asuntos que le son encomendados por algunos de sus clientes.

Salta a la vista la violación de los Cánones de Ética números 18, 19 y 23 que rigen los deberes del abogado para con sus clientes. El Canon 18, en lo pertinente declara:

> Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

> Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. 4 L.P.R.A. Ap. IX C. 18.

El Canon 19 exige:

El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. 4 L.P.R.A. Ap. IX C. 19.

Y el Canon 23 establece entre otros principios:

La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen. 4 L.P.R.A. Ap. IX C. 23.

■ Las quejas relacionadas precedentemente acusan los trastornos que han sufrido los clientes con motivo de la falta de diligencia del querellado en el manejo de sus asuntos. No puede olvidarse que las personas que le hacían las encomiendas profesionales, como abogados debían responder a su vez a unos terceros. Aunque en su informe el querellado produce evidencia de que todas las quejas han sido satisfactoriamente resueltas, ello es un atenuante, pero no le exime de la sanción disciplinaria apropiada.

■ Ciertamente el querellado incurrió en una falta al retener fondos de sus clientes por tiempo indebido —algunas sumas por concepto de cobros (por lo menos en uno de los casos) y otras por concepto de honorarios adelantados— sin que se hicieran las gestiones a que se había comprometido. Aunque tal retención no fuera con propósitos de apropiación permanente, la dilación es de por sí una infracción al Canon 23. Su proceder en los casos antes examinados es lesiva a la imagen de la profesión de abogado y según señalamos constituye una violación de los Cánones de Ética Profesional indicados.

■ Más aún, el querellado observó conducta impropia hacia este Tribunal[1] al incumplir repetidamente con los

---

[1] Observamos que en 24 de marzo de 1977 emitimos resolución dirigida al abogado Arana referente a la inobservancia de la Ley Notarial al no rendir a su

requerimientos del señor Secretario y las resoluciones emitidas con respecto a las quejas mencionadas. El propio querellado admite en su carta al Secretario de 18 de enero de 1977 que "durante el período 1972 al 1976 estuve sumamente ocupado en la lucha política de nuestro país y por eso se dificultó muchas veces el localizarme". Acepta el querellado, además, que cerró su oficina en 1972 y corrobora ese dato mediante declaración que acompaña firmada por una vecina del edificio en que tenía el querellado su oficina profesional. Todo ello sin que tomara las providencias necesarias que se requerían en protección de los intereses de sus clientes.

■ La Regla 8(j) del Reglamento de este Tribunal dispone que "Todo abogado notificará al Secretario todo cambio en su dirección postal". El querellado no dio cumplimiento a esta regla, resultando que varias veces no recibió las comunicaciones que se le remitían. En otras ocasiones, a pesar de recibirlas, inclusive por correo certificado con acuse de recibo, hacía caso omiso de ellas.

Lo anterior nos obligó a suspenderlo provisionalmente del ejercicio de la profesión conforme nos autoriza la Regla 13(d) de nuestro Reglamento, en 21 de septiembre de 1977. Al comparecer el querellado ante nos mediante representación profesional y ofrecernos una explicación y enterarnos de su paradero, le reinstalamos al ejercicio de la abogacía "sujeto ello a lo que resulte de la investigación que lleva a cabo el Procurador General y lo que en su día dispongamos sobre el particular".

La conducta altamente censurable del querellado relatada precedentemente con respecto a sus clientes y a este Tribunal nos obliga a tomar medidas disciplinarias contra él. Estimamos que el abogado Arana debe responder por

---

debido tiempo determinados índices notariales, así como el no haber cumplimentado el informe estadístico anual de documentos autorizados durante el año 1976, y le apercibimos contra futuras inobservancias de las disposiciones de la Ley Notarial.

sus actuaciones. Procede como sanción disciplinaria —en adición al término que fuera suspendido— tres meses de suspensión del ejercicio de la abogacía efectivo en la fecha en que sea notificado de la presente. Queda apercibido de regular su conducta profesional dentro de los márgenes éticos preceptuados en los cánones. El querellado tomará todas las providencias que estime necesarias para proteger los intereses de los clientes que actualmente representa.

Notifíquese al Colegio de Abogados y la Administración de los Tribunales.

*Se dictará la correspondiente sentencia.*