CP-1999-010                                                           1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | Querella |
|---|---|
| José A. Feliciano Rodríguez | 2000 TSPR 70 |

Número del Caso: CP-1999-0010

Fecha: 26/04/2000

Oficina del Procurador General:

> Lcda. Ivonne Casanova Pelosi
> Procuradora General Auxiliar

Abogado de la Parte Querellada:

> Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

José A. Feliciano Rodríguez          CP-1999-010

PER CURIAM

San Juan, Puerto Rico a 26 de abril de 2000.

I

El Sr. José Torres Otero (en adelante "el querellante") contrató al Lcdo. José A. Feliciano Rodríguez (en adelante "el querellado") para que autorizara la Escritura de Compraventa Número 25 de 15 de julio de 1993, mediante la cual el querellante le compraba a la Sucesión de Primo Vega una propiedad. De la escritura surgía que la propiedad tenía una deuda contributiva de $4,000.00, cantidad que le fue entregada al querellado para que se hiciera cargo de saldarla. Autorizada la escritura, el querellante acudió al Departamento de Hacienda para solicitar la exención                     contributiva                     sobre

dicha propiedad. Su solicitud fue denegada por subsistir en el Centro de Recaudación de Ingresos Municipales (C.R.I.M.) la deuda contributiva vigente al día de la compraventa. El quejoso intentó infructuosamente comunicarse con el querellado en diversas ocasiones. No fue hasta el 10 de julio de 1998 –aproximadamente cinco (5) años más tarde– que el querellado le restituyó al querellante dicho pago.

A raíz de ello, el 11 de mayo de 1999, el Procurador General formuló querella contra el Lcdo. José A. Feliciano Rodríguez imputándole los siguientes cargos:

CARGO I

El Lcdo. José a Feliciano Rodríguez violentó los principios establecidos por el Canon 18 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a ejercer su profesión con celo, cuidado y diligencia.

CARGO II

El Lcdo. José A. Feliciano Rodríguez violentó los principios establecidos por el Canon 23 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a dar pronta cuenta del dinero u otros bienes de su cliente y a no mezclarlo con sus propios bienes o permitir que se mezclen.

CARGO III

El Lcdo. José A. Feliciano violentó los principios establecidos por el Canon 38 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a preservar el honor y la dignidad de la profesión legal.

El 7 de septiembre de 1999, el querellado contestó la querella presentada en su contra. Referimos el caso al Hon. José F. Rodríguez Rivera para que, en calidad de Comisionado Especial, escuchara y recibiera la prueba y preparara el informe correspondiente. Examinados los informes presentados por el Comisionado Especial[1] y las

---

[1] Se titulan "Informe del Comisionado Especial" presentado el 3 de enero de 2000, notificado el 11 de enero de 2000; e "Informe Suplementario del Comisionado Especial para Resolver Solicitud de Determinaciones de Hechos Adicionales", presentado el 1 de febrero de 2000, notificado el 22 de febrero de 2000.

comparecencias del Procurador General en torno a los mismos,[2] procedemos a resolver.

                                    II

Se desprende del Informe del Comisionado Especial que: el querellado se comprometió a acudir al C.R.I.M. a averiguar el monto de la deuda contributiva y a saldarla, razón por la cual le fue entregada la suma de $4,000; que el querellante visitó en varias ocasiones la oficina del querellado sin obtener resultado alguno; que no fue hasta julio de 1998 que el querellado le reembolsó al querellante la suma retenida; que, a preguntas del querellado, la Sra. Angela Montes – quien había sido su secretaria legal hasta 1996– aceptó haberle entregado al querellado los mensajes sobre las visitas del querellante

_____

[2] El Procurador General replicó a ambos informes mediante "Moción" y "Comentarios En Torno Al Informe Del Honorable Comisionado Especial", el 19 de enero y el 28 de febrero de 2000, respectivamente. El querellado no presentó objeción a los informes del Comisionado Especial.

a su oficina; que el querellado aceptó no haberse comunicado con el querellante, mas sin embargo adujo no recordar si éste le dejó su número telefónico; alegó, además, haber sufrido una crisis emocional debido a diversas razones,[3] entre ellas: que estuvieron hospitalizados él y su hija, que fue víctima de la incompetencia y falta de cooperación de su socio, que tuvo problemas matrimoniales.[4] El querellante atestó que, a pesar de sus visitas y llamadas telefónicas al querellado, nunca fue informado de su alegada enfermedad.

III

El Canon 18 de Ética Profesional, 4 L.P.R.A. Ap. IX, le impone a los abogados la obligación de ejercer su profesión con celo, cuidado y diligencia. En lo pertinente establece que:

> "[e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable."

Por su parte, el Canon 23 de Ética Profesional, *supra*, dispone lo siguiente con respecto al manejo de los bienes del cliente:

> "[e]l abogado no debe adquirir interés o participación alguna en el asunto en litigio que le haya sido encomendado.
> Un abogado no debe adelantar o prometer ayuda financiera a su cliente para gastos médicos o subsistencia, excepto que puede adelantar el pago de las costas del litigio, y los gastos de investigación y de exámenes médicos necesarios para representar debidamente el caso de su cliente.
>
> La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen."

Sobre el particular, en *In re Ramírez Ferrer*, Opinión de 1 de marzo de 1999, 99 T.S.P.R. 38, 99 J.T.S. 41, pág. 787, sostuvimos que "la confianza entre abogado y cliente, en particular, el escrupuloso manejo de fondos, constituye elemento inseparable que se proyecta no

---

[3] Por las cuales no advino en conocimiento de la querella presentada en su contra hasta finales del año 1996.

sólo dentro del foro togado puertorriqueño, sino en el respeto y la estima ante la imagen pública.  (Citas omitidas.)"

Allí aclaramos que el hecho de haber devuelto el dinero retenido o haberlo retenido sin la intención de apropiarse de él permanentemente no libera al abogado querellado de una posible sanción disciplinaria. Por el contrario, "[l]a dilación en la devolución de los fondos de por sí es causa suficiente para tomar medidas disciplinarias contra el abogado. (Citas omitidas.)" *Id.*

Tal comportamiento constituye un grave atentado a la relación fiduciaria entre abogado y cliente.  *Id.*, pág. 788.[5]  En *In re Juan Carlos Gorbea Martínez*, Opinión de 1 de diciembre de 1999, 99 T.S.P.R. 190, 2000 J.T.S. 4, pág. 447, expusimos que "[el Canon 23] [c]lara y diáfanamente prohibe **la retención y disposición inapropiada de cualquier suma de dinero pertenecientes** [sic] **a los clientes**. (Citas omitidas.)"  (Énfasis en el original.)

En relación al deber de preservar el honor y la dignidad de la profesión, el Canon 38 de Ética Profesional, *supra*, establece que:

> "[e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia....
>
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable...."

En *In re Ramírez Ferrer, supra*, pág. 789, reiterando a *In re Coll Pujols*, 102 D.P.R. 313 (1974), indicamos que "cada abogado es un espejo en que se refleja la imagen de la profesión.  Sus actuaciones reflejan ante la comunidad las bases del concepto que ésta se forme, no solamente del abogado en particular que actúa, sino también de la clase

---

[4] Alegadamente se separó de su esposa.

[5] Véase, además, *In re Rivera Carmona*, 114 D.P.R. 390 (1983); *In re Arana Arana,* 112 D.P.R. 838 (1982).

profesional toda que debe representar con limpieza, lealtad, y el más escrupuloso sentido de responsabilidad. (Cita omitida.)"

Pasemos ahora a aplicar las normas antes expuestas al caso ante nuestra consideración.

## IV

Ciertamente, el comportamiento del querellado de retener indebidamente –durante aproximadamente cinco (5) años– $4,000.00 pertenecientes a su cliente, sin realizar la gestión a la cual se comprometió, constituye una flagrante violación a los Cánones 18, 23 y 38 de Ética Profesional. Este proceder, mancilla inaceptablemente la imagen de la profesión y menoscaba la relación fiduciaria entre abogado y cliente. Lo anterior es suficientemente reprochable como para justificar la suspensión indefinida e inmediata del querellado del ejercicio de la abogacía.[6]

Por los fundamentos esbozados, suspendemos indefinida e inmediatamente del ejercicio de la abogacía a José A. Feliciano Rodríguez, a partir de la notificación de esta Opinión, y le imponemos el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro del término de treinta (30) días a partir de su notificación el cumplimiento de estos deberes, notificando también al Procurador General.

Se dictará sentencia de conformidad.

---

[6] Cabe señalar que en el caso número TS-3317, mediante Opinión Per Curiam de 11 de diciembre de 1998, suspendimos al Lcdo. José A. Feliciano Rodríguez únicamente del ejercicio de la notaría, por el término de tres (3) meses, contados a partir de su notificación el 15 de diciembre de 1998 y hasta que otra cosa dispusiera este Tribunal. Dicho término venció el 15 de marzo de 1999. El 7 de septiembre de 1999 el querellado solicitó su reinstalación al ejercicio de la notaría, asunto pospuesto hasta tanto resolviéramos el presente caso.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

    José A. Feliciano Rodríguez        CP-1999-010

SENTENCIA

San Juan, Puerto Rico, a 26 de abril de 2000.

Por los fundamentos expuestos en la Opinión Per Curiam precedente, la cual se hace formar parte de esta sentencia, suspendemos indefinida e inmediatamente del ejercicio de la abogacía a José A. Feliciano Rodríguez, a partir de la notificación de esta Opinión, y le imponemos el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro del término de treinta (30) días a partir de su notificación el cumplimiento de estos deberes, notificando también al Procurador General.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón limitaría la suspensión a un (1) año. El Juez Asociado señor Fuster Berlingeri no intervino.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo