per curiam:
Nos corresponde atender una querella contra un abogado que aceptó la representación legal de una dienta para instar una apelación ante la entonces Junta de Apelaciones del Sistema de Administración de Personal (JASAP). Tal apelación fue posteriormente desestimada por haber sido presentada fuera del término de presentación, sin que tal desestimación, así como la dilación que la provocó, le fueran informadas a la dienta por el abogado aquí querellado.
Además, y más importante aún, nos corresponde evaluar la conducta de dicho abogado, quien retuvo por espacio de cuatro años tres mil dólares pertenecientes a su dienta.
Por entender que la actuación del querellado se apartó de las normas éticas que rigen el ejercicio de la profesión, resolvemos que su conducta infringió los Cánones 18, 19, 23 y 35 de Ética Profesional, 4 L.P.R.A. Ap. IX.
*219 I
El Ledo. Eugenio Rivera Lozada fue admitido al ejercicio de la abogacía y del notariado el 14 de diciembre de 1967 y el 1 de febrero de 1968, respectivamente.
El 24 de julio de 2001, la Sra. Sandra Ivette López Narváez presentó la queja que dio origen a este procedimiento disciplinario, por lo que procederemos a reproducir los hechos en detalle.
A. La quejosa, Sandra Ivette López Narváez, contrató los servicios del querellado para apelar una decisión notificada el 2 de mayo de 1996, en la que la Administración de Corrección le denegaba un ascenso que ésta había solicitado para el puesto de Oficial de Custodia II, del cual consideró que era merecedora. En dicha comunicación se advertía sobre el derecho que le asistía a la señora López Narváez de apelar la decisión en el término de treinta días, contados a partir de la notificación de la decisión. La referida apelación, en virtud de reglamento, tenía que presentarse en JASAP.(1)
No obstante, el aquí querellado no sólo presentó la apelación el 20 de junio de 1996, esto es, dieciocho días fuera del término, sino que, además, la dirigió a la Administración de Corrección, quienes la recibieron el 25 de junio de 1996.
Posteriormente, el 10 de diciembre de 1996, seis meses después de la notificación, el querellado remitió la apelación a JASAP, que la desestimó por falta de jurisdicción.
Esta situación no fue informada prontamente a la quejosa. Esta indicó que cuando le preguntaba al abogado sobre el estado de su apelación, éste se limitaba a darle excusas sin ofrecer información alguna.
*220 Por su parte, el querellado reconoció que había cometido un error al permitir que prescribiera el término de la apelación que le había sido encomendada por la quejosa. Sin embargo, alegó entre otras cosas que continuó realizando gestiones personales para que la señora López Narváez se le nombrara a una plaza de sargento, plaza similar a aquella para la cual no había sido originalmente seleccionada.
B. El segundo aspecto de la queja presentada por la señora López Narváez tiene que ver con un contrato de servicios profesionales que ésta sostuvo con el licenciado Rivera Lozada relacionado con el otorgamiento de una escritura de compraventa de una propiedad perteneciente a los padres de la señora López Narváez. Entre los detalles con relación al negocio de compraventa, nos es pertinente el que la quejosa había acordado con su padre, el Sr. Aníbal López Ferrer, pagar a este último cinco mil dólares como pago total de su participación en el inmueble objeto de la referida escritura.
De esa cantidad, al momento de contratar con el licenciado Rivera Lozada para el otorgamiento de la escritura, la señora López Narváez ya le había adelantado a su padre dos mil dólares. Los restantes tres mil dólares se entregaron al licenciado Rivera Lozada en 1998, por medio de un cheque de gerente pagadero al señor López Ferrer, para que fuera entregado a este último, una vez se otorgara el documento público para el cual el abogado había sido contratado.
La referida escritura de compraventa nunca se otorgó, porque el señor López Ferrer supuestamente no cumplió su parte de un acuerdo mediante el cual se obligaba a firmar un poder que era necesario para completar el otorgamiento de la escritura.(2) En vista de que supuestamente el padre *221 de la quejosa no cumplió su parte, el licenciado Rivera Lozada no le entregó los tres mil dólares. No obstante, el querellado tampoco devolvió en ese entonces el dinero a la señora López Narváez. Surge de la investigación que la quejosa pensó, a base de sus conversaciones con el querellado, que los tres mil dólares estaban consignados en el tribunal.
Sin embargo, como resultado de la investigación realizada como parte de este proceso disciplinario, resaltó el hecho de que el dinero nunca se consignó en tribunal alguno. En cuanto a esto, el querellado aseguró que el referido cheque se había extraviado en una mudanza que llevó a cabo de su oficina. Afirmó que cuando él hizo gestiones con el Banco Popular para conseguir evidencia del cheque, se le informó que por haber transcurrido varios años de emitido ya no era posible obtener la información solicitada.
Finalmente, el querellado devolvió el dinero a la señora López Narváez el 24 de enero de 2002, esto es, prácticamente cuatro años después de haberlo recibido, y esto no por sí, sino luego de que el Procurador General, mediante una carta de 10 de enero de 2002 le requiriese información sobre la alegada consignación.(3)
Con relación a esto último, el querellado simplemente alegó que siempre mantuvo informada a la quejosa sobre las actuaciones de su señor padre, así como de su disposición a devolverle los tres mil dólares.
C. Por todo lo anterior, y en cumplimiento con una or-den de este Tribunal,(4) el 12 de abril de 2005, el Procurador General presentó una querella disciplinaria contra el licenciado Rivera Lozada en la que le imputó cinco cargos *222 por violaciones a los Cánones 18, 19, 23 y 35 del Código de Etica Profesional, supra.
En el Cargo I, el Procurador General imputaba al querellado la primera de dos violaciones al Canon 35 del Código de Etica Profesional, supra, basado en que éste faltó a la verdad al decirle a su cliente que los tres mil dólares que ella le había entregado habían sido consignados en el tribunal para beneficio del padre de la quejosa.
En lo que respecta al Cargo II, el Procurador General imputaba al querellado el haber violado el Canon 23 del Código de Ética Profesional, supra, consistente en mezclar con sus propios bienes el dinero que le fue entregado para que realizara unas gestiones en y para beneficio de su cliente.
En cuanto al Cargo III, el Procurador General imputaba al querellado actuar en violación a las normas establecidas en el Canon 18 del Código de Ética Profesional, supra, al permitir que prescribiera una causa que le fue encomendada y al no haber rendido una labor competente en defensa de los mejores intereses de su cliente.
En el Cargo IV se imputaba al querellado el haber violado el Canon 19 del Código de Ética Profesional, supra, al no informar a su cliente sobre el resultado de su gestión profesional en el caso ante JASAP.
En lo que respecta al Cargo V, el Procurador General imputaba al licenciado Rivera Lozada el haber violado nuevamente el Canon 35 del Código de Ética Profesional, supra, por ocultarle a su cliente la realidad jurídica de lo sucedido con el asunto que le fuera encomendado, haciéndole falsas representaciones de que estaba trabajando en el caso, a sabiendas de que ello no era así.
Luego de un accidentado proceso, cargado de suspensiones solicitadas por ambas partes, el 18 de julio de 2008 la Comisionada Especial (Comisionada) rindió su informe, en el cual estimó probados los Cargos III, IV y V, y nos recomendó encontrar al licenciado Rivera Lozada incurso en *223 violaciones a los Cánones 18, 19 y 35 del Código de Ética Profesional, supra.
En cuanto al primer cargo imputado, relacionado con el Canon 35, supra —en el que supuestamente el querellado faltó a la verdad al decirle a su cliente que los tres mil dólares habían sido consignados en el tribunal— la Comisionada consideró que no fue probado. Ésta concluye que en efecto lo que hubo fue una interpretación confusa por parte de la quejosa, que muy bien podría ser atribuible al abogado por descuido en su manera de explicar, pero no por falta de sinceridad u honradez, como lo establece el referido Canon 35.
En cuanto al Cargo II, relacionado con la violación al Canon 23 del Código de Ética Profesional, supra —por haber mezclado con sus propios bienes el dinero que le fue entregado para que realizara unas gestiones en y para beneficio de su cliente— la Comisionada Especial tampoco lo encontró probado. Ésta basó su conclusión en que nunca se evidenció que el querellado hubiese mezclado con sus propios bienes el dinero que le fue entregado para que realizara unas gestiones en y para beneficio de su cliente. Debidamente sometido el caso a nuestra consideración, procedemos a resolver.
II
A. El Canon 18 del Código de Ética Profesional, supra, establece que todo abogado tiene la obligación de defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad, y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. Por ello, los deberes éticos de la profesión exigen a todo abogado actuar con el más alto grado de diligencia y competencia posible.(5)
*224 Es deber del abogado velar por los mejores intereses de su cliente. Hemos sostenido que todo abogado tiene la obligación de atender los intereses de sus clientes desplegando la mayor diligencia y el mayor celo y cuidado en los asuntos que le han sido encomendados.(6) Por lo tanto, la desidia, el desinterés, la inacción y la displicencia como patrón de conducta en la representación del cliente violentan las disposiciones del Código de Ética Profesional.(7)
Recientemente expresamos que aquella actuación negligente que pueda conllevar, o que en efecto conlleve, la desestimación o el archivo de un caso, infringe el Canon 18 del Código de Ética Profesional, supra.(8) Como norma general, hemos sancionado y hasta suspendido del ejercicio de la profesión a todo abogado que, con su desatención o desidia, haya provocado la desestimación o el archivo del caso de su cliente.(9)
Los deberes de competencia y diligencia deben guiar la labor de un abogado al tramitar todo asunto profesional sometido por su cliente ante su consideración. Obrar contrario a estos principios es un acto que abre las puertas a la injusticia.(10)
B. De otra parte, el Canon 19 del Código de Ética Profesional, supra, impone a todo abogado el deber ineludible de mantener informado a su cliente de todo asunto importante que surja en el trámite de su caso.(11) Esta obligación es un elemento imprescindible en la rela *225 ción fiduciaria que caracteriza el vinculo abogadocliente.(12)
El referido Canon 19 establece que no cumplir con este deber configura una violación ética independiente y al margen del deber de diligencia.(13) Es por ello que en innumerables ocasiones hemos expresado que se viola el Canon 19, supra, cuando no se atienden los reclamos de información del cliente, no se le informa del resultado adverso de la gestión encargada, la acción se desestima o se archiva, no se mantiene al cliente al tanto del estado o de la situación procesal del caso o, simplemente, se niega al cliente información sobre el caso.(14)
C. El Canon 23 del Código de Ética Profesional, supra, entre otros principios, dispone:
La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen.
Cuando un abogado retiene fondos de sus clientes, dicha acción constituye una práctica altamente lesiva a la profesión legal.(15) Tal conducta lesiona la naturaleza fiduciaria que rige la relación entre el abogado y su cliente. Además, afecta la imagen de dignidad e integridad que debe guardar y proyectar todo abogado y la reputación de la profesión legal en la comunidad.(16)
*226 Ni la devolución del dinero retenido al cliente ni la falta de intención para apropiárselos permanentemente eximen a un abogado de la sanción disciplinaria correspondiente. En ese contexto, hemos expresado que la dilación en la devolución de los fondos, de por sí, es causa suficiente para infringir el Canon 23, supra.(17)
D. El Canon 35, supra, exige primeramente que la conducta de todo miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada. Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en la vida privada como en el desempeño de su profesión, debe conducirse de forma digna y honorable.(18)
Al respecto, reiteradamente hemos expresado que un abogado que falta a la verdad infringe el Canon 35, supra, independientemente de los motivos que lo movieron a incurrir en esa conducta o de que no se hubiera perjudicado a tercero alguno.(19) La verdad es un atributo inseparable del ser abogado, por lo que su compromiso con ésta debe ser incondicional.(20)
E. Por último, según dispone la Regla 14 del Reglamento del Tribunal Supremo, corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba.(21) Al desempeñar una función similar al juzgador de instancia, el Comisionado Especial se encuentra en mejor posición para aquilatar la prueba testifical y adjudicar *227 credibilidad, por lo que sus determinaciones tácticas merecen nuestra mayor deferencia.(22)
Por lo tanto, aunque este Tribunal no está obligado a aceptar el informe de un Comisionado Especial en un procedimiento disciplinario contra un abogado, sino que podemos adoptar, modificar o rechazar tal informe, de ordinario sostendremos sus determinaciones de hecho, salvo que se demuestre prejuicio, parcialidad o error manifiesto.(23)
III
Con el beneficio de la normativa antes expuesta, pasamos a evaluar los hechos que motivan la presente querella.
A. Primeramente y en cuanto a los primeros dos car-gos, los cuales la Comisionada Especial no encontró probados, es menester expresarnos con relación al Cargo II, por no coincidir con su dictamen.
El Cargo II tiene que ver con la actuación del querellado de haber mezclado con sus propios bienes el dinero que le fue entregado para que realizara unas gestiones en y para el beneficio de su cliente. En cuanto a esto, sostiene la Comisionada que nunca se evidenció que el querellado hubiese mezclado con sus propios bienes el dinero que le fue entregado por su cliente.
En esta conclusión yerra la Comisionada Especial. Como señalamos, ya hemos sostenido que la dilación en la devolución de los fondos de por sí es causa suficiente para infringir el Canon 23, supra.(24) Las actuaciones del querellado violaron claramente la normativa ética. No existe justificación alguna para que el abogado devolviera el dinero *228 a su cliente cuatro años después de que le fuera entregado, de manera distinta a aquella en que lo recibió. Si existían problemas para realizar las gestiones que le fueron encomendadas, su deber mínimo era comunicarse con su cliente y devolverle el cheque lo antes posible. La displicencia del licenciado Rivera Lozada ocasionó que el cheque en cuestión caducara y que se extraviara por su propio descuido, consecuencias naturales de haberlo retenido por tanto tiempo.
Además, la conducta del querellado demostró que en realidad éste no tenía intenciones de devolver los fondos retenidos a su cliente. Claramente surge de la prueba que éste entregó a su cliente los fondos retenidos apenas dos semanas después que el Procurador General le requiriera información sobre éstos. Al mismo tiempo, el querellado hizo caso omiso en múltiples ocasiones a los reclamos de su cliente para que le devolviera el dinero.
Por tal razón, la conducta del licenciado Rivera Lozada de retener, por cuatro años, fondos pertenecientes a su cliente infringe claramente el Canon 23 del Código de Ética Profesional, supra, y demuestran una actitud de menosprecio hacia sus deberes como abogado. Esto, sin considerar que la cantidad retenida podría considerarse sustancial, dinero del cual su dienta se vio privada por todo ese tiempo.
Tanto de las determinaciones de hechos de la Comisionada como del expediente surge claramente que el querellado también violó el Canon 18, supra, al permitir que prescribiera una causa que le fue encomendada y al no haber rendido una labor competente en defensa de los mejores intereses de su cliente.
La prueba demostró que el 2 de mayo de 1996 la señora López recibió una determinación de la Administración de Corrección en la que se le denegó una solicitud de ascenso a Oficial de Custodia II. Por considerar que se trataba de una decisión injusta e inválida, según su criterio, la que *229 josa contrató al querellado para que presentara una apelación de esa decisión. La apelación debía ser presentada ante lo que en ese momento era la JASAP.
La señora López relató que cuando le preguntaba al querellado sobre el estado de la apelación, éste le decía que estaba trabajando con el caso y no le informó que su apelación había sido desestimada por haberse presentado luego de transcurrido el término de treinta días dispuesto en ley para ello. En la contestación a la queja, el querellado no mencionó este aspecto, lo que obligó al Procurador General a requerirle información sobre esto.
Es en su Contestación al Informe del Procurador General que el querellado mencionó, en términos generales, las razones para que la quejosa no hubiera sido ascendida como interesaba, concluyendo que la agencia había ejercido su discreción y que, aunque no fue favorable a su cliente, no se le violó ningún derecho, porque todos los candidatos eran buenos. El querellado mencionó que la apelación había sido desestimada por falta de jurisdicción, aunque aludió a ciertas comunicaciones que tuvo con JASAP, las cuales acompañó.
Del expediente surge que la carta denegatoria respecto a la selección fue recibida por la quejosa el 2 de mayo de 1996 y que ésta incluía claramente la advertencia del derecho a la apelación en un término de treinta días a partir de su notificación.
Como ya señalamos, surge que la apelación de 19 de junio de 1996 fue presentada el 20 de junio de 1996, o sea, de forma tardía, y que fue dirigida a la Administración de Corrección en lugar de a JASAP. No fue sino hasta el 10 de diciembre de 1996 que el querellado remitió a JASAP la apelación solicitando que ésta fuera aceptada, agencia que desestimó la apelación por falta de jurisdicción.
En la Contestación a la Querella, el querellado hizo constar que en ningún momento fue contratado para representar a la quejosa en cuanto al caso ante JASAP. Adujo *230 que una licenciada tenía el caso. En su contestación no mencionó de manera alguna su responsabilidad en el caso al no presentar a tiempo la apelación. Ante estos hechos, es evidente la falta de diligencia y competencia del querellado, y la pobre defensa que desplegó en los mejores intereses de su cliente.
Por último, la alegación de que el abogado continuó realizando gestiones personales para que a su dienta se le nombrara a una plaza de sargento, no nos persuade como defensa o atenuante ante su incumplimiento. El hecho de que el querellado, por la razón que sea, cuente con recursos o conexiones, e intente utilizarlas en beneficio de su dienta, no oblitera la realidad de que su falta de competencia en la defensa de los mejores intereses de ésta, la privó de sus posibilidades de hacer valer sus derechos mediante los mecanismos administrativos y judiciales.
C. En cuanto al Cargo IV, el cual le imputa al querellado la violación del Canon 19 del Código de Ética Profesional, supra, éste quedó claramente probado. El querellado omitió informar a su cliente sobre el resultado de su gestión profesional en la apelación ante JASAP.
Asimismo, la prueba sostiene el Cargo V, el cual le imputa al querellado otra violación al Canon 35 del Código de Ética Profesional, supra. El querellado ocultó a su cliente la realidad jurídica de lo sucedido con el asunto que le fue encomendado, haciéndole falsas representaciones de que estaba trabajando en el mismo, a sabiendas de que ello no era así.
D. Hemos expresado que, al determinar la sanción disciplinaria aplicable a un abogado querellado, podemos tomar en cuenta varios factores. Entre éstos se encuentran la reputación del abogado en su comunidad, el previo historial de éste, si es su primera falta, la aceptación de la falta y su sincero arrepentimiento, si se trata de *231 una conducta aislada, el ánimo de lucro que medió en su actuación, el resarcimiento al cliente y cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien de acuerdo con los hechos.(25)
En cuanto a los factores antes mencionados, aunque esta sería la primera falta del abogado, su actitud ante y durante este proceso disciplinario nos obliga a concluir que no ha habido una aceptación clara o sincera de su actuación. Con relación a algún atenuante, el único que se recomienda en el informe de la Comisionada Especial señala que no hubo prueba de que los motivos del querellado para faltar a su deber estén cimentados en el lucro personal. Sin embargo, este atenuante aplicaría a los Car-gos I y II, no así para los Cargos III, IV y V.
La conducta altamente censurable del querellado nos obliga a tomar medidas disciplinarias en su contra. Estimamos que el licenciado Rivera Lozada debe responder por sus actuaciones, por lo que procede como sanción la suspensión inmediata y por seis meses del ejercicio de la abogacía.
Además, se le apercibe al Ledo. Eugenio Rivera Lozada que en el futuro deberá ceñirse a las normas éticas que rigen el ejercicio de la profesión y que están contenidas en los cánones de ética profesional y la normativa jurisprudencial, o de lo contrario podríamos ser más rigurosos en una próxima ocasión.
El Alguacil de este Tribunal deberá incautarse de la obra y del sello notarial del abogado suspendido, y deberá entregarlos a la Directora de la Oficina de Inspección de Notarías. El Tribunal, además, le impone al Ledo. Eugenio Rivera Lozada el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, de devolverle cualesquiera honorarios recibidos por trabajos *232 no realizados e informarle oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Asimismo, deberá certificarnos, dentro del término de treinta días contados a partir de la notificación de esta opinión per curiam, el cumplimiento de estos deberes, notificando también al Procurador General.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado sin opinión escrita.

 El reglamento vigente para ese entonces era el Reglamento Procesal de la Junta de Apelaciones del Sistema de Administración de Personal, Reglamento Núm. 5370 de la Junta de Apelaciones del Sistema de Administración de Personal de 30 de enero de 1996.

 Los detalles de dicho acuerdo y su alegado incumplimiento no son pertinentes al asunto de autos.

 El Ledo. Eugenio Rivera Lozada entregó finalmente el dinero a la quejosa mediante un cheque de gerente del First Bank, adquirido el 15 de enero de 2002.

 Resolución de 14 de abril de 2003, en la cual se le ordenó al Procurador General que presentara una querella.

 In re Santos Rivera, 172 D.P.R. 703 (2008); In re Vilches López, 170 D.P.R. 793 (2007).

 In re Vilches López, supra; In re Fernández Díaz II, 172 D.P.R. 556 (2007).

 In re Santos Rivera, supra; In re Vilches López, supra; In re Padilla Pérez, 135 D.P.R. 770, 776 (1994).

 In re Santos Rivera, supra; In re Colón Morera, 172 D.P.R. 49 (2007); In re Hoffman Mouriño, 171 D.P.R. 567 (2007).

 In re Santos Rivera, supra; In re Rosario, 116 D.P.R. 462, 467 (1985).

 Id.

 In re De León Rodríguez, 173 D.P.R. 80 (2008).

 In re García Muñoz, 170 D.P.R. 780 (2007); In re Criado Vázquez, 155 D.P.R. 436, 456 (2001), In re Flores Ayffán, 150 D.P.R. 907, 914 (2000).

 In re Colón Morera, supra.

 In re Colón Morera, supra; In re Vélez Valentín, 124 D.P.R. 403, 410 (1989); Colón Prieto v. Géigel, 115 D.P.R. 232 (1984); In re Acevedo Álvarez, 143 D.P.R. 293 (1997).

 In re Vázquez O’Neill, 121 D.P.R. 623, 627 (1988).

 íd.

 In re Arana Arana, 112 D.P.R. 838, 844 (1982); In re Vázquez O’Neill, supra.

 In re Santiago Tirado, 173 D.P.R. 786 (2008); In re López González, 171 D.P.R. 567 (2007).

 In re Santiago Tirado, supra; In re Grau Acosta, 172 D.P.R. 159 (2007).

 In re Grau Acosta, supra; In re Busó Aboy, 166 D.P.R. 49 (2005).

 4 L.P.R.A. Ap. XXI-A.

 In re García Aguirre, 175 D.P.R. 433 (2009); In re Morales Soto, 134 D.P.R. 1012, 1016 (1994).

 In re Pagán Pagán, 171 D.P.R. 975 (2007); In re Morell, Alcover, 158 D.P.R. 791 (2003); In re Soto López, 135 D.P.R. 642, 646 (1994).

 In re Arana Arana, supra; In re Vázquez O’Neill, supra.

 In re Díaz Ortiz, 150 D.P.R. 418, 427 (2000); In re Arroyo Rivera, 148 D.P.R. 354 (1999).