

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Eugenio L. Rivera Ramos | 2010 TSPR 53<br><br>178 DPR \_\_\_\_ |

Número del Caso: CP-2007-17

Fecha: 13 de abril de 2010

Abogada del Querellado:

      Lcda. Ruth Castro Algarín

Oficina del Procurador General:

      Lcda. Minnie H. Rodríguez
      Procuradora General Auxiliar

Materia: Conducta Profesional
     (La suspensión será efectiva el 23 de abril de    2010,
    Fecha en que se le notificó al abogado de su s    uspensión
    Inmediata).

Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correccione   s del proceso de compilación y publicación oficial de las decisio   nes del Tribunal. Su distribución electrónica se hace como    un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

                              CP-2007-17

Eugenio L. Rivera Ramos


                      PER CURIAM

        En San Juan, Puerto Rico, a 13 de abril de 2010.


            "La abogacía cumple una función
        social de notable importancia en
        nuestra sociedad por su aportación
        imprescindible a la realización de la
        Justicia. Así, quienes tienen el
        privilegio de ser miembros de tan
        exalta cofradía, tienen una
        responsabilidad ineludible de actuar
        siempre acorde a los más rigurosos
        principios éticos." In re García Muñoz,
        Op. de 3 de abril de 2007, 2007
        T.S.P.R. 90, 2007 J.T.S. 95 a la pág.
        1360, 171 D.P.R. __ (2007).


                      I


        El Lcdo. Eugenio L. Rivera Ramos fue admitido

al ejercicio de la abogacía el 7 de agosto de 2002

y al ejercicio del notariado el 17 de julio de

2003. En su desempeño como abogado, el licenciado Rivera Ramos asumió la representación legal de la Sra. Diana Fernández Navarro y del Sr. Isidro García Fraticelli en un caso sobre incumplimiento de contrato y daños y perjuicios ante el Tribunal de Primera Instancia, Sala de San Juan. Mediante dicha demanda, la señora Fernández Navarro y el señor García Fraticelli procuraban el resarcimiento de los daños y perjuicios ocasionados por varios demandados ante la negligencia en la inscripción de un inmueble en el Registro de la Propiedad. Como consecuencia de unas faltas no corregidas en las escrituras sometidas al Registro de la Propiedad, la señora Fernández Navarro y el señor García Fraticelli se vieron imposibilitados de liquidar la comunidad de bienes existente tras su divorcio. Los hechos que dan base a la queja que hoy nos ocupa están relacionados al trámite de dicho caso.[1]

Para llevar a cabo esta gestión, el 14 de febrero de 2004, la señora Fernández Navarro y el señor García Fraticelli suscribieron un contrato de servicios profesionales con el Lcdo. Eugenio L. Rivera Ramos. En dicha ocasión, los ahora querellantes depositaron con el querellado la suma de dos mil dólares ($2,000.00). En ese momento, las partes acordaron que sería la señora Fernández Navarro la encargada de mantener la

---

[1] *Isidro Miranda Fraticelli y otros v. José Alberto Mercado Miranda y otros*, KAC-2004-7756.

comunicación con el querellado ya que por compromisos profesionales, al señor García Fraticelli se le hacía imposible.

A partir del momento en que se suscribió el contrato, transcurrieron varios meses sin que la señora Fernández Navarro recibiera información sobre el progreso del caso. Ante tal situación, en varias ocasiones la querellante intentó comunicarse por teléfono con el licenciado Rivera Ramos. Sin embargo, no tuvo éxito alguno. Luego de varios meses, el licenciado Rivera Ramos se comunicó con el señor García Fraticelli para reunirse. En ese momento, el licenciado Rivera Ramos le informó al querellado que la razón de su ausencia se debía a que se encontraba en los Estados Unidos continentales por razón de una enfermedad. Las partes acordaron que en lo sucesivo sería el señor García Fraticelli quien continuaría las comunicaciones con el licenciado Rivera Ramos pues la señora Fernández Navarro se encontraba muy molesta ante la desidia y dejadez del querellado. Además, se realizó otro depósito por la cantidad de dos mil dólares ($2,000.00). Luego de esta cita, el señor García Fraticelli se personó en dos ocasiones a la oficina del licenciado sin poder reunirse con éste. En dos ocasiones adicionales se canceló la visita por teléfono. Finalmente, el 18 de enero de 2006, el señor García Fraticelli no fue atendido nuevamente.

Luego de varios trámites procesales,[2] el 17 de noviembre de 2004, el licenciado Rivera Ramos radicó la demanda. La demanda incluyó alrededor de 14 demandados, sin embargo, sólo fueron emplazados cinco (5) de ellos,[3] quienes a juicio del querellado, eran los más importantes y sobre quienes recaía la mayor responsabilidad. La decisión de no emplazar a los restantes demandados no fue consultada, informada o explicada a sus clientes por el licenciado Rivera Ramos.

Luego de instada la demanda, el notario autorizante de las escrituras preparó un acta de subsanación que fue presentada al Registro de la Propiedad. Mientras se dilucidaba el caso, surgió un incidente procesal sobre si se trasladaba el caso o no a otra sala. Aunque la causa de acción surgía de un incumplimiento contractual sobre una escritura de compraventa se incluyó una causa de acción por daños y perjuicios como efecto del incumplimiento. Además, en la sala que se encontraba el pleito sólo se veían casos por incumplimiento contractual. A un día de que se venciera el término de seis (6) meses para diligenciar los emplazamientos, es decir, el 16 de mayo de 2005, el querellado radicó una moción en la que solicitó la expedición de los emplazamientos de los demandados desconocidos que

---

[2] Se procedió a realizar un estudio de título que tardó varios meses.
[3] Los demandados que el querellado consideró más importantes fueron emplazados entre el 17 y 18 de febrero de 2005.

faltaban por emplazar. El 19 de mayo de 2005, el tribunal expidió una orden de mostrar causa para el emplazamiento tardío. El término para emplazar a dichas partes había vencido el 17 de mayo de 2005 y del expediente no surgía razón alguna para que la parte demandante no hubiese promovido la expedición de los emplazamientos.

Así las cosas, en la conferencia inicial con antelación al juicio celebrada el 1 de junio de 2005, el tribunal declaró sin lugar la solicitud de emplazamiento tardío y no permitió un término para extender el período de emplazamiento. Sostuvo que en ausencia de justa causa no se permitiría traer a nadie más al pleito a menos que el emplazador certificara mediante declaración jurada las gestiones que infructuosas hizo, así como que la parte demandante acreditara justa causa para no haber comparecido antes al tribunal para solicitar la extensión del término para emplazar.

No fue hasta el 1 de septiembre de 2005 que el licenciado presentó una moción suplementaria a la solicitud para la expedición de los emplazamientos en la que adjuntó una declaración jurada del emplazador con las diligencias realizadas. En vista de que de la declaración jurada no se desprendía la justa causa para la dilación el tribunal ordenó a la parte demandante presentar una demanda enmendada para eliminar a las partes que no pudieron ser emplazadas. Además, el 24 de agosto de 2005, el tribunal emitió una orden en la que denegó la

solicitud de paralización del caso hasta que se resolviera si procedía trasladar el caso a una sala de daños y perjuicios. A tales efectos, el tribunal señaló una conferencia con antelación al juicio para el 6 de octubre de 2005. El tribunal dispuso que una vez se enmendara la demanda y se eliminaran a los demandados que no fueron emplazados, resolvería lo concerniente al traslado del caso a la sala de daños y perjuicios.

El 6 de octubre de 2005, se celebró la conferencia entre los abogados de las partes. El querellado no compareció a esta reunión ni excusó su incomparecencia. El tribunal emitió una minuta en la que le requirió al querellado, entre otras cosas, que mostrara justa causa por la cual no debía ser sancionado por su incomparecencia a la conferencia pautada. Se ordenó que la minuta fuera notificada directamente a los demandantes a sus respectivas direcciones y se le apercibió de que el tribunal podría desestimar la demanda con perjuicio.

Previo a la conferencia entre abogados, la señora Fernández Navarro, a falta de información de parte del querellado y ante las continuas citas que éste le canceló, recurrió a visitar la página electrónica de la Rama Judicial y fue así que se enteró de un señalamiento pendiente del caso. Al percatarse sobre este señalamiento, el señor García Fraticelli se comunicó con el querellado pero éste le informó que no tenía que asistir a la vista. Sin embargo, tiempo después, la

señora Fernández Navarro recibió copia de la minuta de la vista del 6 de octubre de 2005 y se enteró de la incomparecencia del querellado a la conferencia. Tras varios intentos fallidos del señor García Fraticelli y de la señora Fernández Navarro para comunicarse con el querellado por vía telefónica, el señor García Fraticelli visitó la oficina del querellado y allí le informaron que el querellado se hallaba fuera de Puerto Rico con su madre, quien se encontraba enferma. [4] En dos ocasiones más la señora Fernández Navarro volvió a la oficina del querellado para solicitar el expediente del caso, pero la secretaria se negó a entregarlo porque no tenía autorización para hacerlo.

El 24 de octubre de 2005, el querellado sometió una moción para mostrar causa por su incomparecencia a la conferencia del 6 de octubre de 2005. Informó que debido a que tuvo que llevar de emergencia a su madre en ambulancia al Hospital Pavía, se le había hecho imposible comparecer a la vista. Aseguró que intentó comunicarse con el tribunal pero le fue imposible. El 27 de octubre de 2005, el tribunal le requirió mediante orden una

---

[4] Existe una incongruencia sobre quién visitó en esta ocasión al licenciado Rivera Ramos. En la carta cursada por el licenciado Rivera Ramos el 10 de febrero de 2006, éste mencionó que fue la señora Fernández Navarro. Sin embargo, en la respuesta a dicha carta, la señora Fernández Navarro señaló que fue el señor García Fraticelli quien visitó la oficina.

certificación médica de su madre y le alertó de las órdenes incumplidas.[5]

Molesta y preocupada por la actitud de abandono en la que se encontraba su causa de acción, el 28 de octubre de 2005 la señora Fernández Navarro presentó una queja contra el licenciado Rivera Ramos por retención indebida de expediente, falta de información, retención indebida de dinero por los servicios prestados e incumplimiento con las órdenes del Tribunal de Primera Instancia. Ante la imposibilidad de conseguir el expediente, el 17 de noviembre de 2005 los querellantes, por derecho propio, presentaron en el tribunal una moción en la que informaron sobre los trámites hechos para obtener el expediente del caso y las múltiples gestiones para lograr la renuncia de la representación legal del querellado. Pidieron a su vez un plazo para contratar nueva representación legal.

El 23 de enero de 2006, el tribunal dictó una orden exigiéndole a la señora Fernández Navarro que acreditara que el licenciado Rivera Ramos no le había entregado el expediente, así como todas las gestiones infructuosas para obtenerlo. Por su parte, se descalificó al licenciado Rivera Ramos como representante legal de la parte demandante y se le sustituyó por una nueva

---

[5] Se refería al término concedido para que se mostrara causa por la cual no debía ser desestimada la causa de acción instada contra el Banco Popular que vencía el 7 de noviembre de 2005 y con las órdenes emitidas en la minuta de la conferencia del 6 de octubre de 2005.

representación legal. Asimismo, se reiteró la conferencia señalada para el 22 de febrero de 2006. Luego, mediante moción de 23 de enero de 2006 se acreditó la entrega del expediente.

El 1 de febrero de 2006, el querellado presentó su moción de renuncia e informó que no había honorarios insatisfechos, ni suma alguna pendiente de ser reembolsada a los querellantes. En la conferencia del 22 de febrero de 2006, se le concedieron 20 días a la parte demandante para que presentara demanda enmendada para así eliminar a los demandados que no fueron emplazados en el plazo de seis meses. En la demanda enmendada de 13 de marzo de 2006 sólo se incluyeron los cinco demandados.[6] El 21 de marzo de 2006, el tribunal emitió una orden de desistimiento con perjuicio contra los demandados Banco Popular de Puerto Rico y Popular Mortgage Inc. sin especial imposición de costas. El 1 de agosto de 2006, el tribunal dictó sentencia final en la que decretó a la parte demandante por desistida del caso con perjuicio, sin imposición de costas ni honorarios de abogado. Cabe señalar que en el curso de la vista celebrada ante el Comisionado Especial, los querellantes no aportaron prueba de que el trabajo extrajudicial y judicial del

---

[6] Se le permitió a la parte demandante que incluyera como parte demandada a la persona que realizó el estudio de título y su aseguradora. Sin embargo, dicha gestión no se realizó.

querellado estuviera valorado en menos de cuatro mil dólares ($4,000.00).

Las anteriores circunstancias motivaron la presentación de la queja por parte de la señora Fernández Navarro y del señor García Fraticelli. Mediante Resolución del 29 de junio de 2007, ordenamos al Procurador General presentar la correspondiente querella contra el Lcdo. Eugenio Rivera Ramos. El Procurador General rindió un informe el 6 de abril de 2006 en el que no encontró prueba suficiente de violación a los Cánones de Ética Profesional por parte del licenciado Rivera Ramos. Luego de la presentación de dicho Informe, la señora Fernández Navarro sometió evidencia e información adicional en torno a la queja que nos ocupa. En vista de la información y la documentación adicional presentada, emitimos una Resolución el 15 de diciembre de 2006, en la que ordenamos al Procurador General re-evaluar la queja presentada para que se sometieran las recomendaciones correspondientes. El 8 de marzo de 2007, en el "Informe Suplementario al Informe" el Procurador General expresó que del estudio de la información suplementaria facilitada por la querellante, los hechos apuntaban a una posible violación de los Cánones, 12, 18, 19 y 20, supra. Entonces, el 22 de febrero de 2008, designamos al Lcdo. Wilfredo Alicea López como comisionado especial en este caso. En el descargo de la encomienda impuesta, el comisionado especial sometió su informe con las

determinaciones de hechos y las recomendaciones pertinentes. Sometido el caso ante nuestra consideración, procedemos a resolver.

## II-A

Según establece el Preámbulo de nuestro Código de Ética, "es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía," por lo que "la consecución de estos fines le impone a los miembros de la profesión jurídica, sobre quienes recae principalmente la misión de administrar la justicia y de interpretar y aplicar las leyes, el deber de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad". 4 L.P.R.A. Ap. IX Preámbulo. El Canon 12 de Ética Profesional, supra, impone al abogado el deber de tramitar las causas con puntualidad y diligencia. In re Vélez Lugo, 168 D.P.R. 492, 496 (2006). Asimismo, impone a los abogados y abogadas la obligación de ser responsables en la tramitación de los casos que le son encomendados, para evitar entorpecer la resolución de los mismos. In re López Montalvo, Op. de 27 de mayo de 2008, 2008 T.S.P.R. 103, 2008 J.T.S. 123, 173 D.P.R. __ (2008).

En su texto literal este Canon dispone que:
Canon 12. Puntualidad y tramitación de las causas
Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos, ser puntual en su asistencia y conciso y exacto en el

trámite y presentación de sus causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente. 4 L.P.R.A. Ap. IX C. 12.

La obligación establecida por el Canon 12, supra, ha de cumplirla el abogado y la abogada en todas las etapas de un litigio, y comprende el acatar fielmente las órdenes del Tribunal. In re Collazo I, 159 D.P.R. 141 (2003); In re Pagán Hernández, 141 D.P.R. 113 (1996). Conforme con lo anterior, se ha enfatizado que los abogados deben la más estricta observancia a las órdenes judiciales. De otro modo pueden quedar sujetos al rigor disciplinario. In re Collazo I, supra, pág. 141, esc. 10.

La continua desobediencia de las órdenes del tribunal demuestra una grave infracción a los principios básicos de ética profesional que exigen el mayor respeto hacia los tribunales. In re Collazo I, supra, pág. 149. El comportamiento de todo abogado "no debe ser otro que el fiel cumplimiento de la ley y el respeto al poder judicial." In re Díaz Alonso Jr., 115 D.P.R. 755, 162 (1984). Véase, además, Acevedo Cabrera v. Compañía Telefónica de P.R., 102 D.P.R. 787, 791 (1974). Por supuesto, no se puede pasar por alto que en ocasiones los abogados y abogadas están sujetos a la posibilidad de señalamientos conflictivos. Sin embargo, éstos no son razones válidas para suspender y posponer vistas

judiciales señaladas con tiempo. Neri Tirado v. Tribunal Superior, 104 D.P.R. 429 (1975). No obstante, los tribunales están obligados a ser comprensivos cuando las circunstancias del caso ameritan la posposición de la vista. In re Vélez Lugo, supra, pág. 497. Ahora bien, la incomparecencia injustificada a las vistas señaladas por el tribunal, que ocasionen la suspensión y peor aún, la desestimación de la acción judicial, son violaciones patentes del Canon 12, supra. In re López Montalvo, supra; In re Rosado Nieves, 159 D.P.R. 746 (2003).

B

El Canon 18 de los Cánones de Ética Profesional, supra, le impone a todo abogado y abogada el deber de desempeñarse de forma capaz y diligente al defender los intereses de su cliente, desplegando en cada caso su más profundo saber y habilidad, y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. Este deber se infringe cuando asume una representación legal consciente de que no puede rendir una labor idónea competente o que no puede prepararse adecuadamente para el caso sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

Ya este Tribunal ha manifestado que "[t]odo miembro de la profesión legal tiene el ineludible deber de defender los intereses de su cliente con el compromiso de emplear la mayor capacidad, lealtad, responsabilidad,

efectividad y la más completa honradez." In re Cuevas Velázquez, Op. de 29 de julio de 2008, 2008 T.S.P.R. 138, 2008 J.T.S. 158, 174 D.P.R. __ (2008). "Se ha sostenido sin ambages, que aquella actuación negligente que pueda conllevar o en efecto conlleve, la desestimación o archivo de un caso, se configura violatoria del Canon 18 de los Cánones de Ética Profesional, supra." In re Pujol Thompson, Op. de 19 de junio de 2007, 2007 T.S.P.R. 129, 2007 J.T.S. 136, 171 D.P.R. __ (2007). "Y así debe ser pues el deber de diligencia profesional del abogado es del todo incompatible con la desidia, despreocupación y displicencia." Id., 2007 J.T.S. 136, pág. 1759.

Este Tribunal manifestó en In re Vélez Barlucea, 152 D.P.R. 298 (2000), que no constituye una violación del deber que impone el Canon 18, supra, el no levantar la defensa de falta de jurisdicción sobre la persona del demandado. En este caso, al licenciado Vélez Barlucea se le imputó, entre otras cosas, el haber incurrido en conducta violatoria del Canon 18, supra, al no levantar las defensas afirmativas que protegían a su cliente. Señalamos entonces que es facultad discrecional del abogado o la abogada, en consulta con su cliente, invocar o no la defensa de falta de jurisdicción sobre la persona. **Puede ser ésta una estrategia o táctica de litigación. Sin embargo, esta decisión debe ser consultada con los clientes y éstos deben estar de acuerdo.** In re Vélez Barlucea, supra, págs. 307-308.

C

El Canon 19 de Ética Profesional, supra, le impone a todo abogado y abogada el deber de mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. Esto significa que el abogado está obligado a informarle a los clientes sobre las gestiones realizadas para la tramitación de la causa de acción para la que fue contratado. In re García Ortiz, Op. de 10 de junio de 2009, 2009 T.S.P.R. 110, 2009 J.T.S. 113 ,176 D.P.R. __ (2009). El deber de informar al cliente es un elemento imprescindible de la relación fiduciaria del abogado y el cliente. La actuación de un abogado de mantener ajeno a su cliente de las incidencias de su caso constituye una lesión al Canon 19 del Código de Ética Profesional, supra, y al proceso general de impartir justicia. In re Rosario, 116 D.P.R. 642 (1985); In re Cardona Vázquez, 108 D.P.R. 6 (1978). El abogado que acepta un caso y no demuestra la competencia y diligencia que exige el ejercicio de la abogacía, y que no mantiene al cliente informado de todo asunto importante que surja en el desarrollo del caso, incurre en violación tanto a lo dispuesto en el Canon 18 como al Canon 19, supra C. 18 y 19. In re Rosario, supra.

Hemos expresado, además, que un abogado no sólo debe representar a su cliente con fidelidad, lealtad y diligencia, sino que debe mantenerlo informado de todo

asunto importante que surja en el desarrollo del caso cuya atención le ha sido encomendada. In re Cardona Vázquez, supra, págs. 17-18. En otras palabras, el abogado debe mantener informado a su cliente de las gestiones realizadas y del desarrollo de los asuntos a su cargo, consultándole cualquier duda sobre asuntos que no caigan en el ámbito discrecional, y dentro de los medios permisibles, debe cumplir con las instrucciones de su representado. In re Pagán Ayala, 109 D.P.R. 712 (1980).

D

La relación abogado cliente debe fundamentarse en la absoluta confianza. Asimismo, todo abogado o abogada le debe a sus clientes un trato profesional caracterizado por la mayor capacidad, la más devota lealtad y la más completa honradez. Y para cumplir con lo anterior, el abogado debe poner todo su empeño. Canon 18, 4 L.P.R.A. Ap. IX, C. 18. El Canon 20, supra, dicta el procedimiento que debe seguir un abogado al renunciar a la representación legal de un cliente. Dispone dicho Canon que al advenir efectiva la renuncia del abogado, todo letrado está obligado a entregar el expediente del caso, así como cualquier documento relacionado. Canon 20, supra. Al hacerse efectiva su renuncia o descalificación, el abogado tiene la obligación de entregar el expediente a su cliente **de inmediato y sin dilación alguna**. Canon 20, supra.

En reiteradas ocasiones hemos manifestado que en nuestra jurisdicción un abogado no tiene derecho a retener los documentos de un cliente ni a gravar bienes de este último, aunque medien controversias respecto a los honorarios profesionales. Nassar Rizek v. Hernández, 123 D.P.R. 360 (1989); In re Vélez, 103 D.P.R. 590 (1975). "Esta norma es corolario de la libertad de selección que tiene todo ciudadano de encomendar a un abogado una gestión profesional, y de estimarlo conveniente, retirarle la misma." In re Vélez, supra, pág. 599.

E

El emplazamiento tiene raigambre constitucional, en virtud del debido proceso de ley. Quiñones Román v. Compañía ABC H/N/C Supermercado, 152 D.P.R. 367 (2000); First Bank of P.R. v. Inmob. Nac., Inc., 144 D.P.R. 901 (1998); Peguero y otros v. Hernández Pellot, 139 D.P.R. 487, 494 (1995); Lanzó Llanos v. Banco de la Vivienda, 133 D.P.R. 507 (1993); Reyes v. Oriental Fed. Savs. Bank, 133 D.P.R. 15 (1993). Cuando un demandado es emplazado debidamente, el tribunal adquiere jurisdicción sobre su persona y el demandado quedará obligado por el dictamen que se emita eventualmente. Márquez v. Barreto, 143 D.P.R. 137, 142 (1997). Por eso, dada la dimensión constitucional del procedimiento de emplazamiento, hemos establecido que sus requisitos deben cumplirse estrictamente y que su inobservancia priva de

jurisdicción al tribunal. <u>Dátiz v. Hospital Episcopal</u>, 163 D.P.R. 10(2004); <u>First Bank of P.R.</u>, <u>supra</u>, pág. 914; <u>Rodríguez v. Nasrallah</u>, 118 D.P.R. 93, 98-99 (1986).

La Regla 4.3(b) de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 4.3(b), vigente al momento de los hechos, disponía que los emplazamientos serían diligenciados dentro del término de seis meses (6) meses de haber sido expedidos. Este término se cuenta desde la presentación de la demanda. <u>Dátiz v. Hospital</u>, <u>supra</u>; <u>Monell Cardona v. Aponte</u>, 146 D.P.R. 20 (1998).[7]

Hemos resuelto que el término para diligenciar los emplazamientos es de cumplimiento estricto, no de carácter jurisdiccional, por lo que la regla le confiere discreción a los tribunales para conceder prórrogas con respecto a dicho término siempre y cuando el demandante muestre justa causa para ello. <u>López v. Porrata-Doria</u>,

---

[7] La nueva Regla 4.3 (c) de Procedimiento Civil de 2009 establece respecto al diligenciamiento del emplazamiento que:

"(a)  . . .

(b)  . . .

(c) El emplazamiento será diligenciado en el término de ciento veinte (120) días a partir de la presentación de la demanda o de la fecha de expedición del emplazamiento por edicto. El Secretario o Secretaria deberá expedir los emplazamientos el mismo día en que se presenta la demanda. Si el Secretario o Secretaria no los expide el mismo día, el tiempo que demore será el mismo tiempo adicional que los tribunales otorgarán para diligenciar los emplazamientos una vez la parte demandante haya presentado de forma oportuna una solicitud de prórroga. Transcurrido dicho término sin que se haya diligenciado el emplazamiento, el Tribunal deberá dictar sentencia decretando la desestimación y archivo sin perjuicio. Una subsiguiente desestimación y archivo por incumplimiento con el término aquí dispuesto tendrá el efecto de una adjudicación en los méritos."

Esta regla estará en vigor a partir del 1 de julio de 2010.

140 D.P.R. 96, 103 (1996). Ahora bien, el término para emplazar

> [s]ólo podrá ser prorrogado por un término razonable a discreción del tribunal si el demandante demuestra justa causa para la concesión de la prórroga y solicita la misma dentro del término original. Transcurrido el término original, o su prórroga, sin que el emplazamiento hubiere sido diligenciado, se tendrá a la parte actora por desistida con perjuicio. Díaz v. E.L.A., supra, pág. 812.

Por otro lado, la Regla 4.5 de 1979, supra, regulaba a la fecha de los hechos el emplazamiento por edicto.[8] Este método de emplazamiento es para usarse en los siguientes casos: (1) cuando la persona a ser emplazada se hallare fuera de Puerto Rico; (2) o estando en Puerto Rico, no pudiere ser localizada; (3) o estando en Puerto Rico, se ocultare para no ser emplazada; (4) o fuere una corporación extranjera sin agente residente. J. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo I, Publicaciones J.T.S., San Juan, P.R., 2000, pág. 174.

Por último, los demandados desconocidos son aquellos de los que sí se conoce su identidad, pero no se conoce su nombre, por esta razón se procede a denominarlos con un nombre ficticio. Por su parte, en cuanto al emplazamiento de los demandados desconocidos, dispone la Regla 4.6., supra, que el emplazamiento se hará por edictos de conformidad con lo dispuesto en la Regla 4.5,

---

[8] Compárese con la Regla 4.6 de Procedimiento Civil de 2009, vigente a partir del 1 de julio de 2010.

supra. Cuando se trate de un demandado con nombre desconocido, la parte demandante tiene la opción de realizar un descubrimiento de prueba que le permita conocer el nombre y la dirección de la parte a quien desea demandar, para luego enmendar la demanda y proceder a emplazar personalmente. Núñez González v. Jiménez Miranda, 122 D.P.R. 134 (1988). "[S]i se decide por este curso procesal, hay que ser conscientes que si no se logra completar el proceso dentro del término de seis (6) meses que dispone la Regla 4.3(b) de Procedimiento Civil, supra, se tiene que solicitar prórroga que exponga las razones justificativas del incumplimiento. Regla 68.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III". Núñez González v. Jiménez Miranda, supra, pág. 143.

Ahora bien, el requisito de justa causa no se demuestra "con vaguedades, excusas o planteamientos estereotipados, . . . sino con explicaciones concretas y particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la tardanza o demora ocurrió razonablemente, por circunstancias especiales". Arriaga v. F.S.E., 145 D.P.R. 122, 132 (1998). Véanse, además, García Ramis v. Serrallés, Op. de 22 de mayo de 2007, 2007 T.S.P.R. 96, 2007 J.T.S. 102, 171 D.P.R. __ (2007); Rojas Lugo v. Axtmayer Enterprises, Inc., 150 D.P.R. 560 (2000); Pueblo v. Pérez Suarez, 146 D.P.R. 665 (1998).

III

A la luz de la normativa anteriormente desarrollada, es forzoso concluir que el Lcdo. Eugenio Rivera Ramos incurrió en conducta violatoria de lo más altos preceptos éticos de nuestra profesión.

El Procurador General imputó como primer cargo al licenciado Rivera Ramos, una violación a los principios enunciados en el Canon 12 de Ética Profesional, supra, al ocasionar dilaciones innecesarias en el trámite del caso KAC-2004-7756. De la prueba desfilada, el Procurador entendió que la tardanza en el diligenciamiento de los emplazamientos y su posterior trámite tardío y sin justa causa, el incumplimiento con las órdenes emitidas en el caso por el Tribunal de Primera Instancia, así como la tardanza en renunciar y entregar el expediente del caso, fueron prueba contundente de la conducta anti ética del querellado.

Como segundo cargo se le imputó al licenciado Rivera Ramos la violación de los preceptos enunciados en el Canon 18 de Ética, supra, al no desplegar la diligencia y responsabilidad necesaria en el trámite del caso KAC-2004-7756, específicamente en cuanto al diligenciamiento de los emplazamientos. Asimismo, se le imputó como conducta violatoria del mencionado Canon la solicitud tardía y fuera de término de unos nuevos emplazamientos que ocasionó la eliminación de demandados en el caso. De igual forma, nuevamente se le imputó la falta de

cumplimiento con las órdenes del foro primario, y la tardanza en cumplir con las órdenes emitidas en el caso. Cabe señalar que a pesar de que el Procurador General en su querella imputó como segundo cargo la violación del Canon 18, supra, en el Informe del Comisionado Especial no se discute nada sobre este particular. Por ser uno de los cargos imputados, pasaremos a abordarlo.

Como cuarto cargo se le imputó al querellado Rivera Ramos la violación de los preceptos contenidos en el Canon 20 de Ética Profesional, supra, al no someter la renuncia al caso KAC-2004-7756 oportunamente y retener indebidamente el expediente de dicho caso cuando le fue requerido por sus clientes en primera instancia y luego, mediante orden del Tribunal de Primera Instancia.

Luego de celebrada la vista ante el Comisionado Especial, Lcdo. Wilfredo Alicea López, éste recomendó encontrar al licenciado Rivera Ramos incurso en violación de los Cánones de Ética Profesional 12, 19 y 20, supra C. 12, 19 y 20. Debidamente sometido el caso ante nuestra consideración, procedemos a resolver.

A.  Primero, Segundo y Cuarto Cargo

Por estar íntimamente relacionados el primero, segundo y cuarto cargo, procedemos a discutirlos conjuntamente.

Alega el querellado en su contestación a la querella que luego de la radicación de la demanda se comenzó con los emplazamientos, entre los que estuvieron el del Banco

Popular, varios notarios involucrados en las transacciones sobre la propiedad y el del Colegio de Abogados. Sin embargo, afirma el querellado que antes de continuar con los emplazamientos, mantuvo comunicación con los abogados del Banco Popular, quienes acudieron al Registro de la Propiedad y sometieron actas de subsanación, lo que al entender del querellado, convirtieron en académico el emplazamiento del resto de los demandados. Partiendo de la premisa de que fuese ésta una táctica o estrategia del abogado en la defensa de los intereses de su cliente, cabe señalar que el licenciado Rivera Ramos nunca consultó ni informó a los querellantes su decisión de no emplazar. Por lo tanto, no obtuvo el consentimiento de éstos para así proceder. La doctrina es clara al establecer que **las decisiones que se refieran a estrategia o táctica del abogado deben ser consultadas y aprobadas por los clientes.**

Por otra parte, el querellado añade como justificación que la relación abogado-cliente ya había sido menoscabada porque la señora Fernández Navarro cortó la comunicación con él, y que el tribunal había determinado continuar el caso con las partes ya emplazadas. Resultan contradictorias las expresiones vertidas por el querellado. Si el emplazamiento de los restantes demandados resultaba académico luego de las actas de subsanación sometidas al Registro de la Propiedad por el Banco Popular, **¿por qué entonces el**

**licenciado Rivera Ramos solicitó prórroga para emplazar a los demandantes a un día del vencimiento del periodo de seis meses dispuesto por la ley para diligenciar los emplazamientos?** Asimismo, el querellado justifica su conducta con el menoscabo de la relación abogado-cliente. Olvida, sin embargo, que el menoscabo que hoy pretende utilizar como escudo es el producto del abandono y la desinformación en la que tenía a sus clientes. Más aún, si la falta de comunicación impedía que el querellado actuara con la diligencia que los cánones requieren, su deber era renunciar en ese momento a la representación legal de los querellantes.

Por otra parte, el tribunal decidió continuar con las partes ya emplazadas debido a que cuando el querellado solicitó prórroga para emplazar a los restantes demandados, no demostró justa causa para la dilación, ni del expediente se desprendían las razones para ella. Eso ocasionó la desestimación de la causa de acción contra los demás demandantes. Como discutimos anteriormente, cuando se le solicita al tribunal una prórroga para el diligenciamiento de los emplazamientos, no sólo debe ser solicitada dentro del término, sino que además la moción debe venir acompañada de la demostración de justa causa que amerite la prórroga. En este caso, cuando el querellado solicitó la expedición de los emplazamientos de los demandados sobre los cuales el tribunal todavía no había adquirido jurisdicción, no

demostró justa causa, por lo que en ausencia de ésta, el tribunal no tenía discreción para prorrogar el término. Fue luego, con la moción suplementaria a la "Moción Solicitando Expedición de Emplazamientos", que el querellado acompañó una declaración jurada del emplazador que justificaba las razones para no haber podido emplazar a los restantes demandados. En dicha declaración, el emplazador expuso que en varias ocasiones visitó la oficina de los demandados, agencias gubernamentales y el Departamento de Estado para localizar a los demandados o conseguir sus direcciones donde ubicarlos, pero no tuvo éxito.

Ahora bien, de la declaración jurada no se desprenden las fechas en las que el emplazador realizó estas gestiones. Asimismo, alegó el querellado en la moción suplementaria que la cantidad de demandados dificultó el emplazamiento. Más aún, tratándose de demandados desconocidos, el querellado tenía la opción de que si del descubrimiento de prueba no lograba obtener los nombres y las direcciones de los demandados, podía proceder entonces a solicitar el emplazamiento por edicto dentro del término de seis (6) meses. Sin embargo, el querellado solicitó la prórroga para la expedición de los restantes demandados, un día antes de que venciera el término de seis meses para emplazar. Con esta moción, el querellado no acompañó declaración jurada alguna para justificar la prórroga. No fue hasta que el tribunal se

lo ordenó que el querellado sometió la declaración jurada, mediante moción suplementaria. Como consecuencia de esta negligencia, el tribunal no permitió la expedición de los emplazamientos y ordenó la enmienda de la demanda para que se eliminara a los demandados no emplazados. Es claro que la falta de diligencia del licenciado Rivera Ramos conllevó la eliminación de partes demandadas en el caso. Ello a su vez ocasionó demoras innecesarias y la posible pérdida de la causa de acción en daños contra dichas partes.

En lo que respecta al incumplimiento del querellado con las órdenes del tribunal, se desprende del expediente que el licenciado Rivera Ramos no pudo asistir a la conferencia entre abogados celebrada el 6 de octubre de 2005 porque tuvo que llevar de emergencia a su madre en ambulancia al Hospital Pavía. El querellado señaló en su "Moción Mostrando Causa por Incomparecencia" que intentó en varias ocasiones comunicarse con la sala señalada pero no tuvo resultado. No obstante, el licenciado Rivera Ramos incumplió con la orden emitida por el tribunal el día 24 de octubre de 2005 en la que se le requirió que sometiera una certificación médica de su señora madre. Sin duda, en ocasiones, ocurren sucesos imprevistos que nos apartan de nuestros compromisos diarios, y entre esos sucesos pueden estar una enfermedad o un accidente. Ahora bien, el querellado jamás mostró la certificación solicitada por el tribunal ni se excusó de otra forma. En

reiteradas ocasiones este Tribunal ha manifestado que constituye una conducta irresponsable en violación al Canon 18, supra, la incomparecencia del abogado a los señalamientos de vista ante el Tribunal de Primera Instancia, su incumplimiento con las órdenes emitidas por dicho tribunal y por el Tribunal Supremo, y la falta de diligencia en la tramitación del caso. In re Grau Díaz, 154 D.P.R. 70 (2001); In re Marrero Figarella, 146 D.P.R. 541 (1998), In re Ortiz Velázquez, 145 D.P.R. 308 (1998). Asimismo, viola este canon un abogado que no comparece a las conferencias sobre el estado de los procedimientos del caso y que no contesta las órdenes y requerimientos del tribunal. In re Aguila López, 152 D.P.R. 49 (2000). Incurre también en violación al Canon 18, supra, el abogado que acepta un caso y no demuestra la competencia y diligencia que exige el ejercicio de la abogacía y que no mantiene al cliente informado de todo asunto importante que surja en el desarrollo del caso. In re Rosario, 116 D.P.R. 462(1985). Véase, además, In re Acosta Grubb, 119 D.P.R. 595 (1987); Colón Prieto v. Geigel, 115 D.P. R. 232 (1984), In re Arana Arana, 112 D.P.R. 838 (1982). Ante lo anterior, es forzoso concluir que el licenciado Rivera Ramos incurrió en una conducta claramente violatoria de los preceptos enunciados en el Canon 18 del Código de Ética Profesional, supra.

Por otro lado, luego de que la señora Fernández Navarro recibió la minuta de la conferencia celebrada el

día 6 de octubre de 2005, y advino en conocimiento de la incomparecencia de su abogado, trató de comunicarse con el querellado, pero nuevamente, no tuvo éxito. Visitó la oficina del letrado en varias ocasiones pero éste tampoco estaba. Por lo tanto, decidió solicitar su expediente ante el estado de indefensión en el que se encontraba pero las secretarias del querellado le informaron que no podían entregárselo pues no tenían autorización para ello. En vista de este cuadro, la señora Fernández Navarro tuvo que acudir por derecho propio al Tribunal de Primera Instancia y solicitar una extensión de los términos que el tribunal dispuso. Entonces, el 29 de noviembre de 2005, el tribunal descalificó al letrado y le ordenó la entrega del expediente a sus clientes. Sin embargo, para el 17 de febrero de 2006, es decir, más de dos meses después, la nueva representación legal de los querellantes no había recibido el expediente. Aduce el querellado que en el contrato de representación legal acordó que no entregaría el expediente hasta que fuese cerrado con las correspondientes mociones, suma de factura y relevo de responsabilidad. Sin embargo, parece olvidar el querellado que según el Canon 20, supra, una vez adviene efectiva la renuncia o descalificación de un abogado o abogada, existe la obligación legal de entregar inmediatamente el expediente, cosa que no hizo sino hasta pasados dos meses después de la orden del tribunal. Cualquier cláusula contractual que contravenga lo

anterior carece de validez por ser contraria a la ley. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Por todo lo anterior, es forzoso concluir que el licenciado Rivera Ramos faltó al deber que le impone el Canon 20 de Ética Profesional, supra, al no entregar el expediente del caso una vez fue efectiva su renuncia.

Por otro lado, los incumplimientos con las órdenes del tribunal no frenaron ahí. Una vez sometida la querella en su contra, el querellado no contestó la primera orden de este Tribunal para que contestara las imputaciones. Se requirió una segunda notificación. Esta forma de actuar refleja una constante indiferencia hacia el tribunal y sus órdenes, lo que conlleva una clara violación del Canon 12, supra y el Canon 18, supra.

Tercer Cargo

En su tercer cargo, el Procurador General atribuyó al querellado incumplir con el deber personalísimo impuesto en el Canon 19, supra, de mantener debidamente informado a sus clientes del trámite y las gestiones del caso KAC-2004-7756, lo que les llevó a que tuvieran que presentar mociones por derecho propio ante el Tribunal de Primera Instancia.

En este caso, el querellado no cumplió con su deber de informar a sus clientes sobre las gestiones para las que fue contratado. Peor aún, los querellantes visitaron en varias ocasiones la oficina del licenciado Rivera

Ramos y trataron de localizarlo varias veces por vía telefónica, sin éxito. Asimismo, cuando advinieron en conocimiento de la incomparecencia de su abogado a la conferencia, visitaron la oficina del querellado y lo llamaron en varias ocasiones pero éste tampoco aparecía. Aduce el licenciado Rivera Ramos en respuesta a este cargo que intentó responderle en varias ocasiones a la señora Fernández Navarro, pero en el teléfono celular de ésta siempre le salía un correo de voz en el cual dejaba mensaje. A su vez, justifica el abandono en el que tenía a sus clientes al menoscabo en la relación abogado cliente producto de la actitud que asumió la señora Fernández Navarro de no relacionarse más con él. Esa alegación no nos convence. Como dijimos anteriormente, la conducta de indiferencia y dejadez del querellado dio como resultado el comportamiento de la señora Fernández Navarro. Además, esto no es excusa ni justificación para mantener a los clientes en un estado de desinformación y desamparo. En todo caso, si no había comunicación con los querellantes, el querellado debió renunciar entonces como abogado, en lugar de mantenerlos desinformados. Esta conducta presenta una falta de diligencia en informar que, a su vez, genera una evidente violación de los preceptos enunciados en el Canon 19, supra.

IV

Resta ahora determinar la sanción que debemos imponer al querellado. Para imponer una sanción

disciplinaria a un abogado por conducta impropia, es necesario considerar el previo historial del abogado; si éste goza de buena reputación; la aceptación de la falta y su sincero arrepentimiento; si fue realizada con ánimo de lucro; y cualquier otro factor pertinente a los hechos. In re Rodríguez Lugo, Op. de 27 de mayo de 2009, 2009 T.S.P.R. 87, 2009 J.T.S. 90, 176 D.P.R. __ (2009); In re Díaz Ortiz, 150 D.P.R. 418 (2000); In re Arroyo Rivera, 148 D.P.R. 354 (1999).

Recientemente, en In re Santos Rivera, Op. de 12 de diciembre de 2007, 2008 T.S.P.R. 12, 2008 J.T.S. 33, 172 D.P.R. ___ (2007), **suspendimos por un mes** a un abogado que no fue diligente en la representación de un caso de un cliente, retuvo indebidamente el expediente de dicho litigio después de haber presentado su renuncia al tribunal correspondiente, y además incumplió con el deber de todo abogado de brindar su dirección actualizada a nuestra Secretaría.

Asimismo, en In re Hernández Pérez I, 169 D.P.R. 91 (2006), al querellado se le imputó el violar los principios establecidos en el Canon 18, supra, al no defender los intereses de sus clientes en forma adecuada y con la debida diligencia, lo que culminó en la pérdida de la causa de acción de daños y perjuicios ante el Tribunal de Primera Instancia. La Comisionada Especial designada estableció que:

> [n]o exist[ía] la menor duda de que la actuación del querellado no fue diligente, ni adecuada, ni responsable. La demanda de daños y perjuicios presentada fue finalmente desestimada a causa de su pobre diligencia consistente en errores crasos, tales como, no atender el trámite, no contestar planteamientos fundamentales y dejar que el caso fuera desestimado sin realizar esfuerzo alguno. Mientras tanto le informaba a sus clientes que todo estaba marchando bien, faltando así la verdad.

Como segundo cargo se le imputó al abogado violentar los principios del Canon 19, supra, al no mantener informado a sus clientes del desarrollo del caso que se le había encomendado. Se tomaron como atenuantes sus más de 30 años de práctica profesional sin señalamiento ético alguno y sus expresiones de arrepentimiento y vergüenza por lo sucedido. **Ordenamos su separación por el término de un año.**

Finalmente, en In re Montes Fuentes, Op. de 30 de septiembre de 2008, 2008 T.S.P.R. 185, 2008 J.T.S. 205, 174 D.P.R. __ (2008), se presentó una querella en contra del licenciado Montes Fuentes en la que se le imputó el no haber cumplido con el deber de diligencia establecido en el Canon 18, supra, ni con la obligación de mantener informados a sus clientes según dispone el Canon 19, supra. El licenciado Montes Fuentes aceptó la representación legal de los querellantes para la presentación de una demanda sobre daños y perjuicios ante el Tribunal de Primera Instancia. Presentó la demanda y después de hacerlo, no se comunicó más con sus clientes. Ya que había transcurrido mucho tiempo desde la

presentación de la demanda sin obtener información sobre el desarrollo del caso, los querellantes acudieron directamente al tribunal para indagar al respecto. Fue entonces que se les informó que la demanda había sido desestimada con perjuicio por no haberse cumplido con el diligenciamiento de los emplazamientos dentro del término correspondiente. Sopesamos en ese entonces para determinar la sanción los siguientes hechos: (1) que el querellado negó su responsabilidad por lo ocurrido, (2) responsabilizó a sus clientes por las faltas, (3) no emplazó a los demandados, (4) no presentó moción de prórroga, (5) no solicitó nuevos emplazamientos oportunamente, (6) no recurrió de la determinación adversa y (6) no les notificó lo ocurrido a sus clientes. Determinamos que el querellado debía ser **suspendido del ejercicio de la profesión indefinidamente**.

Tomando en consideración la jurisprudencia anteriormente reseñada, pasemos a examinar los factores atenuantes y agravantes en el presente caso. No existe duda de que las gestiones del querellado Rivera Ramos resultaron positivas para los demandantes luego de las correcciones realizadas en el Registro, que permitieron que finalmente los querellantes liquidaran la comunidad de bienes existente tras su divorcio. Si bien es cierto que de la minuta de la conferencia entre abogados celebrada el 22 de febrero de 2006 se desprende que se le concedieron veinte (20) días a la parte demandante para

que presentara demanda enmendada en la que eliminara todas aquellas partes que no pudieron ser emplazadas en el término contemplado por la Regla 4.3 (b), no es menos cierto que en ánimos de que no ocurriera una derrota a la justicia, el tribunal reservó para un momento posterior que se trajeran esas partes si el notario Carlos Martínez Olmo no traía como tercero demandado a la persona que le hizo el estudio de título y a su aseguradora. No obstante, de la "Moción en cumplimiento de orden" del 18 de junio de 2006 se desprende que la parte demandante desistió voluntariamente contra los demandados y el tribunal dictó sentencia con perjuicio. También, la parte demandante había desistido anteriormente mediante "Moción de desistimiento y en cumplimiento de orden" de 16 de junio de 2006, de la causa de acción en contra del Lcdo. Carlos Martínez Olmo y del Fondo Notarial. Asimismo, debemos considerar que éste es el primer señalamiento al querellado, quien goza de buena reputación en la comunidad jurídica.

Ahora bien, aun cuando ésta es la primera falta del licenciado Rivera Ramos, debemos considerar como factores agravantes que el querellado no ha aceptado responsabilidad por los cargos y en cambio responsabilizó a la señora Fernández Navarro del menoscabo de la relación abogado-cliente. También, el licenciado Rivera Ramos incumplió en varias ocasiones con las órdenes del tribunal. Adviértase además que el licenciado Rivera

Ramos mantuvo a sus clientes huérfanos de información durante la mayoría del tiempo que duró su representación legal. Asimismo, su conducta le ocasionó daños a los querellantes, pues las causas de acción contra varios demandados fueron desestimadas con perjuicio. Su abandonada, negligente y dejada conducta merece ser sancionada.

Considerado todo lo anterior, ordenamos la suspensión inmediata del Lcdo. Eugenio L. Rivera Ramos de la práctica de la profesión por el término de treinta (30) días. El querellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajos no rendidos. Además, tiene el deber de informar oportunamente de su suspensión a los foros judiciales y administrativos. Estas gestiones deberán ser certificadas a este Tribunal dentro del término de treinta (30) días a partir de la notificación de esta Opinión Per Curiam y Sentencia.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Eugenio L. Rivera Ramos          CP-2007-17

*SENTENCIA*

En San Juan, Puerto Rico, a 13 de abril de 2010.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente Sentencia, ordenamos la suspensión inmediata del Lcdo. Eugenio L. Rivera Ramos de la práctica de la profesión por el término de treinta (30) días. El querellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajos no rendidos. Además, tiene el deber de informar oportunamente de su suspensión a los foros judiciales y administrativos. Estas gestiones deberán ser certificadas a este Tribunal dentro del término de treinta (30) días a partir de la notificación de esta Opinión Per Curiam y Sentencia.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. La Jueza Asociada señora Fiol Matta limitaría la sanción a una censura enérgica. La Juez Asociada señora Rodríguez Rodríguez hace constar la siguiente expresión:

"Disiento de la sanción impuesta por el Tribunal al Lcdo. Eugenio Rivera Ramos por considerarla excesiva. Al igual que lo expresado por el Comisionado Especial en su informe, considero que la 'falta mayor [del licenciado Rivera Ramos] consistió en no haber mantenido informado a sus clientes de su desempeño en el caso y porque no emplazó al resto de los demandados'. Ello requiere que se censure al licenciado Rivera Ramos por este comportamiento mas no su suspensión del ejercicio de la abogacía".

El Juez Asociado señor Kolthoff Caraballo no intervino.


                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo